## Lloyd's Estate.    Copely's Appeals.

<table>
<tr><td>82</td><td>143|</td></tr>
<tr><td>e204</td><td>ᵇ 35|</td></tr>
</table>

1. An auditor proceeded to hear and decide upon exceptions in the absence of the exceptants and their counsel, and with notice from the latter by telegraph that owing to a railway detention he would be unable to be present, and when applied to for a rehearing, proof of the cause of absence having been furnished, summarily refused and the court confirmed his report: *Held*, that this action of the auditor was unusually peremptory, and as the actual facts could only be known by thorough investigation and none had been had, the decree of the court is reversed.

2. Where the accounts of an executor showed that he retained uninvested in his possession and subject to his control for a period of five years, large sums of money, among which were the proceeds of $23,000 United States bonds which he had converted into cash, and the only reason assigned for the retention of these large amounts was the contingency of a recovery in a suit against the estate, the judgment and costs in which only aggregated $13,000: *Held*, that the conversion of the United States bonds was unjustifiable and that the executor was chargeable with interest on the amounts retained in his hands.

3. *Held*, further, that where, as in this case, by the accounts of the executor, it appeared the assets of an estate were collected without difficulty or delay, and their distribution was attended with no controversy, and there was no proof of exceptional or extraordinary services, five per cent. commissions upon the whole principal of the estate were too large.

May 18th and 19th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Orphans' Court of *Blair county:* Of May Term 1876, Nos. 71 and 72.

These were appeals by John Copely and ten other residuary legatees under the will of Hannah Lloyd, deceased, from decrees of the Orphans' Court confirming the reports of the auditor appointed

[Lloyd's Estate.]

to hear exceptions to the account of W. H. Gardner, administrator *d. b. n. c. t. a.* of Gilbert L. Lloyd, deceased, and the account of said W. H. Gardner as executor of Hannah Lloyd, deceased, and to make distribution.

Gilbert L. Lloyd died in 1866, leaving a will, in which he devised all his real and personal estate to his wife, Hannah Lloyd, and made her his executrix.

Hannah Lloyd died on the 6th of January 1870, leaving a will, wherein, after devising her real estate, she bequeathed all her personal estate in trust to her executor to pay certain specific legacies contained in the will, and to distribute the residue among thirteen persons named therein, eleven of whom were the exceptants below. She appointed W. H. Gardner her executor and trustee, to whom, the will having been proved on the 10th of January 1870, letters testamentary were granted on the day following.

At the time of the death of Gilbert L. Lloyd, R. C. Christy and T. McNamara had judgments against him amounting to $1500, and Thomas Farrell had a claim against him of $5000, which was disputed and had been in litigation for several years.

Upon the death of Hannah Lloyd, W. H. Gardner was appointed administrator *d. b. n. c. t. a.* of Gilbert L. Lloyd to dispose of these claims upon his estate.

Gardner filed his accounts in July 1875, and in his account as administrator *de bonis non*, it appeared that he settled the judgments of Christy and McNamara together with the Thomas Farrell judgment, the latter with interest and costs amounting to $11,325.75. These with the expenses attending the litigation of the Farrell claim amounted to $13,978.28.

His account as executor of the will of Hannah Lloyd, showed that between the 12th of February 1870, and the 1st of August 1871, assets, consisting of government bonds, mortgages, judgments, and interest-bearing notes, to the amount of $67,036.18, came into his hands : all of which were at once converted into cash, $23,100 in United States 5–20 bonds being reduced to money very soon after the will of Hannah Lloyd was proved, and other securities to a large amount shortly thereafter. His disbursements to defray the expenses of the administration, and the litigation on account of the estate of Gilbert L. Lloyd, amounted, during this time, to about $5500, leaving the balance of the $67,036.18 in his hands until June 18th 1875, when he claimed credits for the $13,978.28 paid on account of the Gilbert L. Lloyd estate, and $43,710, paid to legatees as per his account filed as trustee.

It appeared, however, that the accountant, from time to time, had advanced to the special legatees different sums of money on account of their legacies, but according to a statement prepared by the appellants retained in his hands continually a monthly balance

[Lloyd's Estate.]

averaging about $18,000 for a period of sixty-four months and an average yearly balance of about $16,000.

In his account the executor made a charge for $3351.80, commissions at the rate of five per cent. upon the entire amount of the estate.

Eleven of the residuary legatees of Hannah Lloyd filed exceptions to these accounts, claiming that the executor should have charged himself with interest on the balances retained in his hands from time to time, and that his charges for his services as executor were excessive. The accountant claimed that the retention of these large amounts was to meet the exigencies of the Farrell case, and that his commissions were reasonable in consideration of the time and labor expended.

The court appointed an auditor to hear the exceptions and make distribution, and on the 14th of September, the day fixed for a hearing by the auditor, the accountant with his counsel and the exceptants with their counsel appeared and at the request of the accountant the hearing was adjourned until September 25th 1875.

One of the counsel of appellants resided at Altoona, seven miles from Hollidaysburg, where the hearing was held, and the other at Tyrone, twenty-one miles distant.

Upon the day fixed for the second hearing by the auditor, the counsel at Altoona was unexpectedly called away and could not attend. The counsel at Tyrone was unable to be present owing to a failure in the railroad connections, and telegraphed on learning of the detention, asking for a continuance and informing the auditor of the inability of either counsel to be present.

The auditor, however, notwithstanding the absence of exceptants and their counsel, proceeded to hear the statement of the accountant and made up his reports.

Before he had filed his reports the counsel for the exceptants furnished proof of the cause of their absence and asked for a rehearing, which was refused by the auditor, on the ground that the audit had adjourned sine die and he had no authority to grant a rehearing.

He then overruled the exceptions and filed his reports, October 27th 1875, making distribution of the funds.

The account of the administrator *de bonis non* was the subject of exception only in so far as it was connected with the alleged errors in the settlement of the account of the executor, and the exceptions taken to the latter therefore include all the questions raised.

Copely and the rest of the residuary legatees filed exceptions to the report, alleging (1) that the auditor erred in not charging the executor with interest on the balances; (2) in allowing the executors's commissions at the rate of five per cent.; (3) in refusing to give the counsel for exceptants a hearing, said counsel having shown the auditor their inability to attend.

The court, which consisted of the associate judges, Dean, P. J.,

1 Norris—10

having withdrawn from the bench because of his having been coun-
sel for the accountant, overruled these exceptions and confirmed the
report absolutely.

The exceptants appealed and assigned for error this decree of the
court.

*D. J. Neff* and *A. A. Stevens*, for appellants.—The auditor
showed unusual and unnecessary haste in closing the case in the
absence of counsel; no vexatious delay was intended, and exceptants
ought not to be prejudiced by an unavoidable accident. If execu-
tors in the first year of their administration convert a funded estate
into cash to an amount more than sufficient to pay all debts and before
legacies become . payable, they will be charged with interest on
the money in favor of residuary legatees: Verner's Estate, 6 ·
Watts 250.   Executors cannot suffer large balances to lie in their
hands totally unproductive for long periods of time : Bruner's Ap-
peal, 7 P. F. Smith 46 ; Yundt's Appeal, 1 Harris 575 ; Light's
Appeal, 12 Id. 181 ; Ake's Appeal, 9 Id. 320 ; Biles's Appeal,
12 Id. 335 ; Rocke *v.* Hart, 11 Vesey 58 ; Donnelly's Estate, 12
Casey 175 ; Parker's Estate, 14 P. F. Smith 311 ; Hughes's Minor's
Appeal, 3 Id. 500 ; Aston's Estate, 5 Whart. 242 ; Lukens's
Appeal, 11 Wright 358 ; 3 Redf. on Wills 401 ; Schieffelin *v.*
Stewart; 1 Johns. Ch. 620 ; King *v.* Talbot, 40 N. Y. 76 ; Smith
*v.* Kennard, 38 Ala. 695.   The labor of the accountant in settling
the estate was trifling.   He had no trouble in marshalling the assets,
consisting as they did of · United States bonds, corporation bonds,
mortgages, notes and other securities readily collectable.   His
commissions were *too* large ; Whelen's Appeal, 20 P. F. Smith
411 ; Stevenson's Estate, 4 Whart. 104 ; Pusey *v.* Clemson, 9 S.
& R. 204 ; Walker's Estate, 9 Id. 223 ; Snyder's Appeal, 4 P. F.
Smith 68.

*Samuel S. Blair* and *Aug. S. Landis*, for appellee.—An ad-
ministrator may retain a reasonable amount of the estate in his
hands to meet expenses and pay claims in suit against the estate
without being liable for interest on such amount : Davis's Appeal,
11 Harris 206 ; Parker's Estate, 14 P. F. Smith 310 ; Heckert's
Appeal, 12 Harris 482.   The money retained here was to meet the
contingencies of a recovery in the Farrell claim.   Common opinion
and understanding have fixed upon five per cent. as a reasonable
allowance for the services of an executor : Pusey *v.* Clemson, 9 S.
& R. 209 ; Askew *v.* Odenheimer, Bald. 386 ; Skinner's Estate, 4
Phila. 189 ; Gable's Appeal, 12 Casey 395 ; Whelen's Estate, 20
P. F. Smith 410 ; Eshleman's Appeal, 24 Id. 48.

Mr. Justice WOODWARD delivered the opinion of the court, Oc-
tober 16th 1876.

These appeals are from decrees of the Orphans' Court confirming

[Lloyd's Estate.]

the report of an auditor upon the account of W. H. Gardner, administrator *de bonis non cum testamento annexo* of Gilbert L. Lloyd, deceased, and confirming the report of the same auditor upon the account of the same accountant as executor of the last will and testament of Hannah Lloyd, deceased. A third account of the trusts created by Mrs. Lloyd's will has been brought up by the record. That, however, contained the distribution of the fund charged to the accountant as executor. The particular items in the account of the administrator *de bonis non* were made subjects of exception only as they resulted from and were connected with the errors alleged to have been committed in the adjustment of the executor's account. The disposition of the executor's account, therefore, will decide all the questions raised.

The decision by the auditor of the exceptions referred to him, in the absence of the counsel of the legatees of Mrs. Lloyd, was unusually prompt, and the refusal to open the case on their application for a rehearing was unusually peremptory. This summary action is to be regretted, for its effect must be to delay the determination of this controversy. With no means of ascertaining the true merits of the questions at issue beyond the facts which the accounts themselves disclose, there would be hazard of injustice to the appellee if this court should undertake to make a final decree. The conclusions of the auditor are not warranted by any evidence contained in his report. Whether those conclusions would be sustained by the actual facts attending the settlement of the estates could only be known as the result of thorough investigation, and no investigation has been had.

Mrs. Lloyd's will was proved on the 10th of January 1870. On the 12th of February 1870, the executor converted United States bonds into cash to the amount of $26,187.41. He charged himself the same day with a cash balance in the First National Bank of $1168.52, and with the balance of a judgment of Patterson *v.* Irwine, and the proceeds of a judgment of Wightman *v.* Irwine, amounting together to $3128.03. He received from H. L. Patterson $5000 on the 26th of February, $2500 on the 6th of March, and $6000 on the 16th of May 1870. Various sums were paid to him up to the 1st of August 1871, including such items as Hollidaysburg water bonds $2050, on the 23d of August 1870, Juniata bonds $3325, on the 22d of September 1870, and Hollidaysburg seminary mortgage $10,857.50, on the 25th of March 1871. As early as the 1st of August 1871, the entire assets of the estate of Mrs. Lloyd, amounting to $67,036.18, passed into his hands in cash. And in his hands the whole fund remained until June 1875, except $3448.26, paid out in the course of administration, and $2077.95 shown by the account on the estate of Gilbert L. Lloyd to have been expended in the progress of a contested litigation. On the 18th and 21st of June 1875 $11,900.23 were paid to satisfy the Farrell

judgment, for costs and counsel fees connected with that judgment, and for fees to the register. The payments to the legatees, amounting to $43,710, appear to have been made on the 21st of June 1875.

It is manifest from this statement that a very large sum of money remained in the possession and under the control of the appellee for a period exceeding five years. Nothing shown as to the circumstances of the estate warranted the sale of the United States bonds in 1870. It is not enough to say that the time when payment of the Farrell claim would be demanded was indefinite, and that, as administrator *de bonis non* of Gilbert L. Lloyd's estate, the appellee could be suddenly called on to meet that. In actual fact, the demand upon him was not made until June 1875. If earlier payment had been required, $26,000 of government securities, immediately and constantly available, were ample resources to satisfy a claim of $13,000; and the possession of those securities, with the means within reach from other sources, afforded perfect protection against any requisition to which the appellee could possibly have been made subject. The other assets were mainly in large sums and were promptly paid. It is not conceivable that a business man of average sagacity, owning such an estate in his own right, under the circumstances disclosed, would have so managed it as to render it for five years utterly unproductive. The tabular statement appended to the paper-book of the appellants exhibits an average balance of $18,229.23 in the hands of the appellee throughout a period of sixty-four months, the interest on which would amount to $5843.35. Even a larger sum would seem indicated by the items in the several accounts. But the statement refers to a "schedule of monthly payments made," which may have included advances on account of legacies. As the case stands upon the facts, it is one to require a surcharge of interest against the appellee. If this court were to undertake to make it, however, under the lights afforded them, a possible wrong might be inflicted which it would be difficult and perhaps impossible to cure. In order to insure a fair hearing of the equities of the parties, the record must go back for a fresh reference of the original exceptions to an auditor, an investigation by him, and a decree in view of the new inquiry by the Orphans' Court. Such a decree made up under the eye of a law-judge would seem advisable. The submission of such questions as this case presents to associate judges is always a hazardous experiment.

The remaining question arises out of the executor's claim for commissions. He has charged five per cent. on the whole principal of the estate. A trustee should be justly compensated for services, responsibility and risk. The character of the trust he has administered, the nature of the duties he has performed, the extent and value of the labor he has bestowed, and the kind of securities in which he has found the funds of the estate to be invested when it

came to his hands, are all elements to be considered in adjusting the amount of his allowance. Of the $67,036.18 to which this estate amounted, $53,047.94 were collected in only seven different sums, and $42,190.44, covering six of these sums, were received between the 12th of February and the 22d of September 1870. No facts have appeared to show that even the usual labor of an executor has been performed by the appellee. The credits taken as executor seem to have been for ordinary disbursements, and those taken as administrator *de bonis non* were for items connected with the claims of Farrell, Christy and McNamara alone. At least reasonable fees were paid to counsel, for $595 were allowed to the appellee as executor, aside from the account of Mr. Blair against the testatrix of $539.41, and $520 were allowed to him as administrator *de bonis non*. As has been said, the conversion in 1870 of all the United States bonds into cash was unjustifiable. All the exigencies of the estate could have been met by retaining them as the testatrix had left them until the use of their proceeds was required. The principal sum in dispute in the Farrell case did not exceed $5000. The final judgment was entered for $4215.23 besides costs. To the extent of over $40,000, the duties of administration appear to have been little more than clerical. Indeed, the sums disbursed to the legatees in the trust account were $43,710. Collected without difficulty or delay as the assets were, with no doubt or controversy attending the distribution, and with no proof of exceptional or even of ordinary services, the claim for compensation was too large. But upon this question, as well as upon that relating to the surcharge of interest, it is feared that if this court were to act finally now, rights of the appellee might be destroyed which he would be able to establish by satisfactory proof. It was said at the argument on his behalf that he had many suits to look after; that he procured a large amount of new testimony in the Farrell case; and that he was compelled to make frequent journeys to Cambria county to adjust items of business there in which Mr. Lloyd had been concerned. It is true that details of this kind ought to have appeared on the face of the accounts, or in evidence before the auditor; and it is true also that the entire absence from the record of all illustrative and explanatory facts was the result of the summary and hurried action of the auditor and of the ill-advised and persistent opposition that was made to a rehearing on the application of the counsel for the appellants. But the truth still remains that a decision in view of the existing conditions of the case would be made in ignorance of possibly justifying circumstances which the appellee would have had the right in a thorough investigation to prove, and might produce in a different direction consequences as mischievous as those which flowed from the mistaken haste of the auditor and the Orphans' Court.

The decree is reversed, the report of the auditor is set aside, and a *procedendo* is awarded.