## Pennypacker's Appeal.

*Liability of Guardians as to Investments.—"Rests" not applicable to case of Omission or Neglect to Invest.*

1. If a guardian neglect to make investments of trust funds, or invest them at less than the legal rate of interest, he is chargeable therefor only with simple interest at the legal rate.

2. In cases of mere omission or neglect on the part of guardians, executors, or administrators to put trust funds out at interest, the principle of *rests*, either semi-annual, annual, biennial, or triennial, does not apply.

APPEAL from the Orphans' Court of *Chester county*.

This was an appeal by Joseph Pennypacker, guardian of Oliver M. Emery, from the decree of the Orphans' Court confirming the auditor's report on his account.

The material facts of the case were these:—William Emery, of East Pikeland, Chester county, died about December 1840, seised of a farm, a wood lot, and a small amount of personal property, leaving a widow and four children by his first wife, and two children, Catharine and Oliver, by his second wife.

By his will, duly proven December 18th 1840, the decedent appointed David West guardian of his four children by his first wife, and Joseph Pennypacker guardian of Catharine and Oliver, the children by his last wife.

Oliver Emery was but little over three years old at the death of his father. He lived with his mother till 1847, and then went to live with Madison Davis, where he stayed till he was fourteen. He then went to live with his uncle, George Williams, and stayed with him till he was sixteen or seventeen, after which he went to A. & L. Pennypacker's, with whom he stayed a couple of years. From that time forward he appears to have worked for his living, by the day, except that he spent a winter term, after he left Pennypackers', in going to school at Trappe. Davis and Williams both found him in clothing, and the last year that he was with Williams he was drawing wages.

The accountant exercised but little supervision over the person of his ward, but confined himself to the care of his estate.

The amount paid to the exceptant's mother, for his maintenance during the time he was with her (about five years), was $26 per year, after which all the expenses paid during any year towards his maintenance were very small, being principally taxes on money at interest, and an occasional bill for boarding, clothing, and tuition.

In his account, filed August 11th 1859, the accountant charged himself with $2670.87, received from the estates of William Emery, the father of exceptant, and from the estates of his brothers, Abraham and Augustus; and also with $1489.34, which,

he alleged, is interest at 5½ per cent. on the money of his ward, in his hands, whilst it was invested, which sum amounted, according to the report of the auditor, to but a trifle over 4 per cent. on the money, if it had been regularly invested.

He credited himself with the various payments made on account of taxes, clothing, and tuition, and for collecting the interest due on his ward's money. For the most of these payments he exhibited receipts. Those payments for which he exhibited no receipts were objected to by exceptant's counsel, but as they seemed to be usual and necessary expenses, and were no doubt paid, they were allowed by the auditor, except an item of $27, for state and county tax, credited April 1st 1859, which was not allowed, because no money of the ward's had been returned for taxation in that or the preceding year.

He also credited himself with $535, for compensation, which is nearly 1½ per cent. per annum on the sums received whilst they were in his hands. By this statement, after deducting the item of $27, above alluded to, the balance due his ward would be $2.97.

The accountant, to support his account, did not exhibit before the auditor any book of original entries, showing his account with his ward, nor any written statement showing to whom his ward's money was loaned, nor in what sums, nor at what rates of interest, nor in what form the securities were taken; but he produced witnesses to show that at various times, from 1847 to 1857, he had lent money in different sums, amounting in the whole to about $3000, at rates of interest from 5 to 5½ per cent., and that the money was stated, at the time of lending, to be "guardian money," and some of it was called "Emery's money," and some of it was called "Oliver Emery's money."

Of this amount there did not appear to have been thus invested more than $1500 at one time, which was between 1856 and 1858, and in some years it was not shown that there was any money invested at all.

The securities taken were generally notes of hand, sometimes secured by the additional name of a neighbour of the borrower, and, so far as it appears, were taken in accountant's own name, and not in his name as guardian of Oliver Emery.

There did not appear to have been any separate account kept with Oliver Emery's estate, so as to show what was the amount of Oliver's estate in his hands. Beyond the statements made by the accountant to the borrowers, at the time of making some of the loans, Oliver's estate was blended with the accountant's own, and could not be traced out in the investments.

It did not appear, from the testimony of his witnesses, that any part of his ward's money was lying at home, or in bank, idle and awaiting investment, at any time.

[Pennypacker's Appeal.]

All the loans mentioned by the witnesses, as made by him to them, were made at 5½ per cent., except one of $540, to William Weber, which was at 5 per cent. In some cases he demanded but 5½ per cent., and in others he demanded 6, but accepted 5½ per cent.

He produced several credible witnesses to prove that it was the custom of the neighbourhood in which he lived, composed chiefly of Mennonists, to loan money at 5 to 5½ per cent., whilst the exceptant produced equally credible witnesses to show that with diligence and care 6 per cent. could readily be obtained in the same neighbourhood.

The ward contended that it was the duty of the accountant to keep the whole amount of his funds employed, that all balances not needed to meet expenses, where they amounted to $100, should have been put to interest, and that a guardian is bound to make his ward's money as profitable as possible, and that where he keeps no separate account, but mingles his ward's money with his own, he is accountable for all the profits that could reasonably have been made, and that therefore the account should be restated, on the above principles, at 6 per cent. interest, allowing him a reasonable time for investments, and that having been negligent in his care of the estate, and seeming to use it more for his own benefit than that of his ward, he should not be allowed compensation for his services.

The accountant, on the other hand, insisted that he had charged himself with all the interest he had received, and should be charged with no more; that it was the usual rate in his neighbourhood; that computation of interest, such as the exceptant demands, would be compounding interest, whilst the law only allows simple interest, and that the compensation charged is but a fair recompense for his services.

The auditor to whom the case was referred, W. Townsend, Esq., after a careful examination of the authorities bearing upon the facts of the case, restated the account, and charged the accountant with simple interest on the principal sums, and on the balances in his hands at the end of every two years, thus allowing an average of a year, without interest, during which to invest the balances. He allowed accountant 1 per cent. per annum for commissions, amounting to $357, and the expenses before mentioned, amounting to $30, incident to management of the estate.

He also suspended interest on the sums paid by the accountant to the exceptant, between April 1st 1857 and April 1st 1859, and between April 1st 1859 and August 11th 1859, when the settlement was made, on the ground that those amounts might have been called in from investment with a consequent loss of interest, and charged the accountant with the balance which he

finds in his hands at date of a former settlement, up to date of his report.

He also charged him with an item of interest on Holman's mortgage, which was not in accountant's account, and which had been paid by mistake to the other guardian, Mr. West. And exhibited as the result a balance in accountant's hands of $1348.60. He also charged him with the costs of the audit.

To this report the accountant filed the following exceptions:—

1. The auditor erred in stating his report that the accountant did not exhibit before the auditor any book of original entries, showing his account with his ward, whereas he did exhibit his account-book, which was in the auditor's possession a long time, showing the account with his ward.

2. The auditor erred in stating that there does not appear to have been more than $1500 invested at 5½ per cent. at any one time, whereas a much larger sum appears to have been invested at different times.

3. He erred in stating that there does not appear to have been any separate account kept with Oliver Emery's estate, and that it appears to have been blended with the accountant's estate; whereas it appears that separate accounts of all the receipts and expenditures for the minor were kept.

4. He erred in charging the accountant with 6 per cent. interest, under the circumstances, only 5½ per cent. being received by him.

5. He erred in adopting the principle of rests every two years, and in charging the accountant with $423.64 interest on balances, thus compounding the interest.

6. He erred, even on the principle he adopted, in charging interest on the whole fund from April 1st 1856 to April 1st 1858, without abatement, for $100 paid the ward within that time.

7. He erred in charging the accountant with $16.97 (with its interest, $17.30), proved to have gone into the hands of David West, as the property of *his* wards, and never received by the accountant.

8. He erred in reducing the compensation to $357, which is less than $20 per annum, for the care of the person and estate of the ward, for the time of the existence of the trust.

9. He erred in directing the expenses of the audit to be paid by the accountant.

The court dismissed the exceptions, and confirmed the report, but delivered no written opinion.

The case was thereupon removed into this court, where the following error was assigned.

1. The court erred in dismissing the guardian's exceptions, and confirming the report of the auditor.

2. In charging the accountant with six per cent. interest on the funds, only five and one-half per cent. being received by him.

5 Wr.—32

3. In adopting the principle of rests every two years, charging the accountant with $413.64 interest on balances, thus compounding the interest.

4. In charging interest on the whole fund, from April 1st 1856 to April 1st 1858, without abatement, for $70 paid the ward within that time.

5. In reducing the compensation to $357, which is only $20 per annum, for the care of the person and estate of the ward, for the time the trust existed.  And,

6. In decreeing the expenses of the audit, to be paid by the accountant.

*W. Darlington*, for appellant.—1. The accountant was not liable with more interest than he received, having acted in good faith to his ward, and invested his moneys at the rates usual in that part of the country: Dietrich *v.* Heft, 5 Barr 92 ; Harland's Estate, 5 Rawle 334.

2. He is not chargeable with interest on interest, as he has been, to the amount of $413.64, as a punishment, it would seem, for not keeping a book account with his ward—blending his ward's money with his own—making profit by charging himself with a little over 4 per cent., charging the usual commission, and not investing closely ; whereas he did keep an account-book with him, and produced it before the auditor, and did not blend the ward's money with his own, further than all men are compelled to do, who, living too far from a bank to deposit their funds conveniently, are compelled to keep them in their own money chests.  As to investments, he was not compelled to proclaim at the cross-roads his willingness and ability to loan money.   There was no proof that he made any profit out of his ward's money, nor that he did not keep it closely invested.   If all these charges were true, they would only amount to " negligence," which would not warrant any such penalty : Act of March 29th 1832, § 18 ; Dietrich *v.* Heft, 5 Barr 92 ; McCall's Estate, 1 Ash. 357 ; English *v.* Harvey, 2 Rawle 309 ; Harland's Estate, 5 Id. 334 ; Lukens's Appeal, 7 W. & S. 62 ; Light's Appeal, 12 Harris 180 ; Robinett's Appeal, 12 Casey 190 ; 2 Wms. Executors 1675.

3. There is a palpable error in charging interest between April 1st 1856, and April 1st 1858, on the whole fund, regardless of a payment of $70 made between those dates.

4. The compensation allowed is too low for over seventeen years' services, and the responsibility of managing an estate, which by an accumulation of interest rose from $1700 to $4100.

5. The costs of the audit were imposed on the accountant for malfeasance.   Let us see if there was any fault in the guardian. The ward came of age August 10th 1858.   In the country, the usual time for repayment of money loaned is the 1st of April.

[Pennypacker's Appeal.]

By the 2d of September 1858, the ward had received that year from his guardian $486. By the 9th of April 1859 he had received $2020.37 more. The account was voluntarily filed August 11th 1859. Everything was exhibited to the ward. The costs of audit are in the discretion of the court. But they will not impose them on a trustee unless he has been guilty of misconduct: Lowrie's Appeal, 1 Grant's Cases 376.

If guardians are to be dealt with as this gentleman has been by the auditor and the court below, it will be difficult to procure any honest man to undertake such trusts.

*Gibbons* and *Pennypacker* for Oliver Emery, the appellee.— The appellant complains that he is charged with 6 per cent. interest. He says he received only 5 and 5½ per cent. on a portion of the fund, and ought not to be charged with more than he received. How do we know he received no more than 5 or 5½ per cent.?

The auditor reports " that he kept no separate account of his ward's money; he loaned money out in small sums among his personal friends and neighbours in his own name on promissory notes; he produced no obligations to show at what rate he loaned the money, to whom loaned, nor in what sums, nor in what form the securities were taken. Beyond the statements made by the accountant to some of the borrowers at the time of making some of the loans, Oliver's estate appears to have been entirely blended with the accountant's own, and could not be traced out in the investments. That he made profit of his ward's moneys by charging himself with but very little more than 4 per cent. interest on it whilst in his hands, and by charging almost 1½ per cent. per annum commissions for care of it, amounting to $535, beside his annual charge for collecting the interest and taking him to school, amounting to $30. So that after the takes on it have been taken out, it netted his ward only about 2¼ per cent. per annum."

The auditor further reported that the prevailing rate of interest in guardian's neighbourhood was 6 per cent.

In view of these facts, the auditor and court below did not err in charging the guardian with 6 per cent. interest.

The expenses paid on account of maintenance yearly were trifling. The interest on balances in guardian's hands, if added to the difference between sums received and interest thereon at 6 per cent., and the sum with which he charged himself, together with the sum of $535 charged for commissions, and $30 expenses charged for collecting interest and taking his ward once to school, makes a greater profit for the guardian out of the money than he made for his ward.

The complaint as to compound interest is entirely incorrect.

[Pennypacker's Appeal.]

He is only charged with simple interest on balances. But in no aspect is the interest compounded at intervals with the principal sum, and made to carry interest.

A guardian of an estate is a trustee for investment alone. The trust in this case is on the same footing precisely as a trust under a will with directions to invest to secure a full income.

The law as settled in this state is, 1. That a guardian for investment is bound by the general rule of duty to keep no part of the funds unemployed. 2. That all balances in hand which are not needed to meet liabilities, when they amount to as much as $100, ought to be put to interest. A guardian failing so to do is guilty of negligence. 3. A guardian is bound to employ the money so as to make it as profitable for his ward as possible.

When the guardian keeps no separate account, but mingles the money with his own, he is accountable for all profits which might have been made: Landis *v.* Scott, 8 Casey 498.

Charging interest on balances is not compounding interest, or charging interest upon interest, as the appellant asserts. The principal sums are not increased by adding interest thereon. The report of the auditor keeps the funds employed at simple interest, and does no more. Each balance is kept separate. The interest upon balances is not vested and compounded. In respect to making rests to ascertain balances, and charging simple interest on each separate balance up to date of audit, the following authorities settle it to be the law of Pennsylvania: Fox *v.* Wilcox, 1 Binn. 198; Say *v.* Barnes, 4 S. & R. 112; Baker *v.* Richards, 8 Id. 16; English *v.* Harvey, 2 Rawle 309; Harland's Accounts, 5 Id. 325; Dietrich *v.* Heft, 5 Barr 87; Heister's Appeal, 7 Id. 455; McCall's Estate, 1 Ashmead 357; Merrick's Estate, 1 Id. 305; Light's Appeal, 12 Harris 180.

The guardian having occasioned the audit by his infidelity to his trust, and litigated for his own interest, it is just he should pay the costs of the audit: Martin's Appeal, 11 Harris 440; Holman's Appeal, 12 Id. 179; Witman's Appeal, 4 Casey 378.

The opinion of the court was delivered, February 4th 1862, by

THOMPSON, J.—In Dietrich *v.* Heft, 5 Barr 87, it was said, that "whatever the rule may be in cases of corruption, or wilful or gross wrong on the part of the guardian or other trustee, we may safely consider, that for mere omission or negligence in Pennsylvania, the rule is to charge simple interest and no more."

This was said by Coulter, J., after a review of precedent cases in this court. The same thing was ruled in Light's Appeal, 12 Harris 180, and simple interest was charged for negligence in not investing: Black, C. J., saying, that "the legatees ought to be satisfied, if they receive as much as they would have got, if he (the executor) had done his duty." This rule was also announced in Biles's Appeal, 12 Harris 335, and recognised in Robinett's

[Pennypacker's Appeal.]

Appeal, 12 Casey 174, a case much discussed on the point of accountability of trustees.

All these cases, with the exception of Biles's Appeal, in which the question did not arise, expressly repudiate the principle of rests, semi-annual, annual, biennial, or triennial, in cases of mere omission and negligence in guardians, administrators, and executors to put trust-moneys out to interest. Profits made in the use of the trust funds by such trustee are chargeable. This is undoubtedly the rule of the later cases on the subject of omission and negligence, and especially since the Act of 29th of March 1852, which declares that executors, administrators, and guardians, shall not be charged a greater rate of interest than the legal rate for the time being.

In this case the auditor found the accountant to have been guilty of negligence in not making investments, and also in not investing at the legal rate. For this he has, by adopting rests, charged him with more than the legal rate. That is to say, he has stated biennial interest accounts, deducting therefrom intermediate expenses and commissions, and charging interest on the balance. This was done to bring it within the explanation of Say v. Barnes, 4 S. & R. 112, given by Coulter, J., in Dietrich v. Heft. But this does not get rid of the objection to rests, and a consequent greater rate than simple interest in a case like the present. This must be corrected. We therefore strike out $413, the excess of interest surcharged by the auditor. We also abate interest on $70 for two years, which had been paid the ward. Nor do we see any reason for charging interest on the sum of $16.97, erroneously paid to other heirs in some way not explained. There seems to have been some mistake in this matter, but by whom we cannot tell, but it is apparent that the money was not in the accountant's hands all the time, and for which portion of time it does not appear. If by an honest mistake of anybody, it was kept out of the guardian's knowledge and possession, he ought not to pay interest, and this is the appearance of the matter here. We also charge the guardian with but half the expense of the audit under the circumstances of this case; the other half must be borne by the estate. The corrections amount to the sum of $469.37; so that, leaving the compensation as found by the auditor, the balance against the accountant will be $879.23.

And now, to wit, February 3d 1862, the decree of the Orphans' Court of Chester county in this case is reversed at the costs of the appellee, and it is now ordered and decreed, that the accountant, Joseph Pennypacker, pay to Oliver Emery, or his authorized agent or attorney, in full of his trust account, the sum of $879.23, with interest from the date of the confirmation of the auditor's report in the court below.

*Per Curiam.*