In re Estate of Peter Starr, deceased.. Appeal of David Starr, surviving executor and legatee.

*Decedents' estates—Findings of fact—Review.*

Where the orphans' court upon sufficient but conflicting evidence finds as a fact that a package containing money bequeathed to a legatee had not been delivered to the legatee by the executor the Supreme Court will not reverse the decree based upon such findings of fact.

*Executor—Liability to legatee.*

Where P. bequeathed a package of money to T., and the executrix of P. delivered it to T., who retained it, till appraisement of the estate of P., when T. returned it to the custody of the executrix, in whose custody and control it remained till her death, when it came into the custody of the surviving executor of P., such executor is not liable to T. for interest on the money while the executrix had it, though he is liable from the time at least, that T. demanded it of him, after it had come into his control and custody.

Argued Feb. 13, 1899. Appeal, No. 145, Jan. T., 1898, by David Starr, from decree of O. C. Schuylkill Co., March T., 1897, No. 18, overruling exceptions to adjudication. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

DUNN, P. J., filed the following adjudication:

From the evidence we find the following facts:

The decedent died on September 6, 1883, having made his last will and testament, dated August 24, 1883, and duly probated on September 17, 1883, leaving his widow, Sarah Starr, to survive him, but no issue. The clauses of the will necessary to be kept before us are as follows:

"I direct and order my executors, hereinafter mentioned, and it is my will that as soon after my death as conveniently can be done they shall deliver over to Margaret L. Tobias all of the household furniture in my possession belonging to her, including a good cow, and also a valuable package in my possession, for her sole and separate use, said package being now in my possession, indorsed with the name of said Margaret L. Tobias.

"I give, devise and bequeath unto my beloved wife, Sarah, all my property, real, personal and mixed, of what nature or kind soever, and wheresoever the same shall be at the time of my death, to have and to hold the same for and during her natural life, and after her death to my beloved nephew, David Starr, or his assigns forever."

Margaret L. Tobias, mentioned in the will, was the niece of decedent and had lived with him and his wife from childhood until his death, and continued to live with his widow until the death of said widow, in 1895. She is now over thirty-seven years of age. David Starr, mentioned in the will, was a nephew of decedent and had lived with him from boyhood. He is now about fifty-five years of age. At the time of decedent's death David Starr and his family lived next door to decedent, under the same roof, with communicating doors between the two houses, and he and his family continued to live in that way with decedent's widow until her death.

Letters testamentary were issued September 19, 1883, to Sarah Starr, the widow of testator, and to David Starr, the nephew and remainderman mentioned in the will. On October 10, the executors filed an inventory and appraisement of the estate, made up of farming implements and the contents of a small store, in all amounting to the sum of $820.75. The same day the executors filed the widow's appraisement, made up of household goods and a few farming implements, in all valued at $300.

Sarah Starr, widow of decedent, died on October 27, 1895, having made her last will and testament, dated June 5, 1893, and duly probated January 16, 1896. Her executors, Abraham Starr and John J. Tobias, filed an inventory and appraisement of her personal property February 7, 1896, made up of

| | | |
|---|---|---|
| Ten bags or packages of money, amounting to | $8,401 | 00 |
| Two 4 per cent U. S. coupon bonds . . | 1,500 | 00 |
| Household goods . . . . . | 177 | 00 |
| | $10,078 | 00 |

Among the packages taken from the safe to make this inventory and appraisement was one marked "Maggie L. Tobias," which contained in gold $1,152, and a fifty cent piece in silver. In addition to the name written on the package were

the figures "22650" and "$3000." The figures were in the handwriting of the testator, Peter Starr, but the name Maggie L. Tobias was not in his handwriting.

On November 6, 1895, Margaret L. Tobias, through her attorney, made written demand upon David Starr, surviving executor of Peter Starr, deceased, for the payment of the legacy due her under the will of Peter Starr, deceased, and designating the legacy demanded as the sum of $1,152.50 and one good cow. To this demand David Starr made no reply.

On November 18, following, on petition of Margaret L. Tobias, setting forth that she was a legatee under the will of Peter Starr, deceased, and that David Starr, executor, had never filed any account of his administration, a citation was issued commanding him to exhibit and file a just account and settlement of his administration of said estate. To this David Starr made answer as surviving executor of Peter Starr, deceased, that after the death of decedent his widow retained the property, real, personal and mixed, in kind, until her death, when it passed under his will to himself; that the package mentioned in the will of Peter Starr, deceased, and marked with the name of Margaret L. Tobias, was given over to her about one year after the death of Peter Starr by himself and his coexecutrix, and that she had received the furniture and cow claimed by her under the provisions of the will. On February 22, 1897, David Starr filed what he claimed to be an account, and what the register accepted and filed as an account of his administration, as executor of the estate of Peter Starr, deceased. Now, having come up for audit, it is found by the court to be only a more extended answer than that before given, showing why an account had not been filed in obedience to the command of the court. There is neither item of debit nor of credit. It is, therefore, no account. To this so-called account exceptions were filed in the form of a replication, denying the allegations of the accountant.

We must consider that David Starr has refused to file an account, and under the 53d section of the Act of March 29, 1832, P. L. 207, the court may state an account against him if the facts warrant it. But he files the paper as his account; the register has treated it as an account, and the legatee regards it as an account. The court will, therefore, treat it as an ac-

count, and if the facts warrant it, surcharge him for what he is liable. In the first place, David Starr contends that he is not liable to account, because none of the assets of the estate of Peter Starr, deceased, came into his possession; that they were taken in possession by the widow of Peter Starr, deceased, immediately upon his death, and that she retained possession of them until her death, when her executors took possession of them and accounted for them as her estate. In the second place, he contends that the valuable package claimed by Margaret L. Tobias was taken possession of by the executors of Sarah Starr with the knowledge of the legatee and made part of the estate of Sarah Starr, deceased, under whose will Margaret L. Tobias received a legacy of $1,000, and that, having accepted this legacy, she is now estopped from claiming the valuable package under the will of Peter Starr, deceased. In the third place, he contends that the valuable package mentioned in the will of Peter Starr, deceased, and directed to be given to the said Margaret L. Tobias, was delivered to her by himself and coexecutrix about one year after the death of Peter Starr, the testator.

As bearing upon the first contention of the accountant we find from the evidence that Sarah Starr, his coexecutrix, at the time of her husband's death, was about sixty-three years of age, and illiterate. David Starr was about forty, a man of some business experience, able to keep accounts in the store; he took upon himself the active duties of the administration so far as any administrative duties were performed. He attended to the making of an inventory and appraisement, but he did not include all of the personal property of the decedent. His own testimony shows that he knew of $2,500 in United States bonds held by the decedent at the time of his death. He made no effort to inventory the entire personal property of the estate. The decedent died seized of real estate worth $80,000. He was to take this estate as remainderman after the death of decedent's widow. This large estate was subject to collateral inheritance tax. He never notified the proper officer, whose duty it is to protect the interest of the state. After the death of his coexecutrix, when her executors came to make an inventory of her estate, he opened the safe and handed out to them ten packages containing $8,401 as her property, and among those

ten packages was the package marked "Maggie L. Tobias," containing $1,152.50.

As evidence bearing upon the second contention of accountant we find that Margaret L. Tobias was present in the room when the executors of Sarah Starr, deceased, met to examine the contents of the safe. It was not shown, however, that she knew what was being done, farther than the contents of the safe were examined, the money in the packages counted and returned to the safe. The appraisers of the estate of Sarah Starr, deceased, were not appointed until February 5, 1896, when the contents of the safe were appraised as part of her estate. David Starr knew this was being done; that the package marked "Maggie L. Tobias" was included in the appraisement of the estate of Sarah Starr, deceased. He did nothing to prevent it, made no objection, although two months prior he had received a written demand from Margaret L. Tobias, through her attorney, demanding the delivery of her package and cow under the will of Peter Starr, deceased.

The third contention of accountant brings us to a square issue. David Starr alleges that the package mentioned in the will of Peter Starr, deceased, was delivered to Margaret L. Tobias one year after decedent's death. This she denies.

In passing it may be said that the second contention of accountant seems rather a denial of the third, for, if the valuable package was included in the estate of Sarah Starr, deceased, it could never have been delivered to Margaret L. Tobias about one year after the death of Peter Starr, deceased. However, it is the issue and it becomes necessary to enter, with some detail, into the evidence bearing on it. Margaret L. Tobias, the legatee, testifies that two or three weeks after the death of Peter Starr, Sarah, his widow, opened the safe and gave her a package which had a tag on marked "Maggie L. Tobias" or "Margaret L. Tobias;" that it was given to her to keep until the appraisement of decedent's estate would be completed; that she did not open or count the contents of the package; that a day or two after the appraisement had been made Sarah Starr demanded the package again; that she returned it to Sarah Starr and she put it back in the safe. She says she saw the bag again a few weeks after that; that Sarah Starr got it out of the safe, emptied it out on the bed and counted the contents, which amounted

to between $1,100 and $1,200 in gold and fifty cents in silver; that she never received any of the money contained in the package. David Starr, the accountant, testifies that one or two months after the death of Peter Starr he saw the valuable package; it was marked "Margaret L. Tobias;" that there were no figures on the tag on the package; that the writing on it was the handwriting of Margaret L. Tobias; that he and Sarah Starr counted the contents of the package and found it contained $1,000 in gold; that there was no silver in it, and that Margaret L. Tobias was not present at the time; that she was not told that they were going to count it. He says that about a week after the death of Peter Starr his will was read, and when he came to the part which mentioned the valuable package Margaret L. Tobias said she did not want to see this package until he was dead one year, and that Mrs. Starr said she would keep it in the safe until the year was up; that on September 6, 1884, when the year was up, Sarah Starr handed out the package to him, in the presence of Margaret L. Tobias, and that he poured the contents out on the bed and counted it. After he had counted it he put it in the bag again and handed it to Margaret L. Tobias, and that she did not ask about it again; that he did not think so far as to take a receipt when he delivered the package; that she said, when it was given her, that it was not as much as she expected.

David Starr denies that Margaret L. Tobias ever made any demand for the package until November 6, when written demand was made through her attorney. She testifies that at three different times before the death of Sarah Starr she made demand for her legacy; that the last time before the death of Sarah Starr when she made demand was about a year prior thereto. There is no other testimony on this point until the death of Sarah Starr, which occurred October 27, 1895. That same evening David Starr opened the safe and took out the will of Sarah Starr, in the presence of his two brothers, Joseph and Abraham Starr. The will was read and replaced in the safe. On the evening of the 29th, following, the safe was opened again by David Starr and he handed out the contents to the executors of Sarah Starr. He handed the package containing $1,152.50 and marked "Maggie L. Tobias" to them also. When he took it out he could see the marking that was on it.

He saw its contents counted, and he made no remark or reference to the fact of there being a package containing such a large amount of money marked with the name of " Maggie L. Tobias." Margaret L. Tobias was there in the same room, took no part in handling the packages or counting their contents. She had full opportunity to hear and see everything that went on. Abraham Starr, one of the executors of Sarah Starr, deceased, and a brother of David Starr, testifies that on this evening, October 29, after the contents of the safe had been counted and the others had gone out of the room, Margaret L. Tobias called him back and told him that she had received her package, and asked him whether it was right for David Starr and Sarah Starr to count the money in it in her absence; that she said she received her package; that there were $1,100 in it, but the odd dollars she could not remember. Joseph Starr, a brother of David Starr, testifies that he was asked to be present when the inventory was made on the next evening, October 30; that the executors of Sarah Starr, deceased, were making the inventory and began in the kitchen. When they had about twenty articles down David Starr asked the question, " Who is the owner of these things?" He said he claimed ownership under the will of Peter Starr and he went and brought the will; that John J. Tobias read it, and then went across the room and read it to Margaret L. Tobias, and that, when he had read down to what she should have, the valuable package and the cow, he explained to her that is all she could have; that upon hearing this she crossed the room to David Starr and said, " I did not receive my package," and David Starr replied, " You did receive it; and I gave it to you out of my own hand into your hand," and that she said, " Well, if I did receive it there was not in it what there was to be in it." David Starr, who had been on the stand previously, had said nothing on this important point. He was recalled and testified to the same words having passed between Margaret L. Tobias and himself.

There were present when these hot words passed between Margaret L. Tobias and David Starr two other brothers of David Starr, Abraham and Walter. But they were not called on this point. John J. Tobias, a brother of Margaret L. Tobias, was called and he said that no such words passed between Margaret L. Tobias and David Starr. Abe Tobias, another

brother of Margaret L., who was present, testified that no such words passed between them. Margaret Tobias testified that nothing of the kind was said by her to David Starr, or by him to her. Ellen Breslin, who is no way related to either side, says she was present and heard the will read; that John J. Tobias did not get up from the table and go over to Margaret L. Tobias and read to her, as testified to by Joseph and David Starr, nor were any such words as testified to by them passed between Miss Tobias and David Starr.

In support of the claim that Margaret L. Tobias had received her valuable package under the will of Peter Starr, deceased, as alleged by David Starr, it was shown by her own testimony that, as early as 1887, she began depositing money in a bank in Lebanon, and that in the beginning of October, 1892, she had on deposit there the sum of $850. It was shown by her testimony that her source of income from the time of Peter Starr's death consisted of the sum of $226, due her by him at the time of his death, and which sum his widow shortly afterwards paid her. She also testified that from the time of his death Sarah Starr paid her fifty cents a day for working in the fields, besides the sum of $52.00 per year for her household duties. This would enable her, by close economy, to save enough from the time of Peter Starr's death to enable her to possess the sum of $850 in October, 1892.

From the evidence we find:

That the valuable package referred to in the will of Peter Starr, deceased, indorsed with the name of Margaret L. Tobias, contained the sum of $1,152.50; that no part of this sum was paid to Margaret L. Tobias as directed by the will of said testator; that after the death of testator Sarah Starr, one of his executors, delivered the package to Margaret L. Tobias and that she retained it until the appraisement of his estate had been made, when she returned it to the custody of Sarah Starr in whose custody and control it remained until her death; that at no time during the life of Sarah Starr did David Starr have the custody or control of said valuable package; that subsequent to the death of Sarah Starr, David Starr obtained the custody and control of the said valuable package, which he handed over to the executors of said Sarah Starr, deceased, and permitted to be appraised and made part of the assets of her

estate on February 5, 1896, although two months prior he had received the written demand of Margaret L. Tobias, through her attorney, for the delivery of said package under the will of Peter Starr, deceased; that the estate of Sarah Starr, deceased, including the said package of $1,152.50, was distributed under her will and decree of court, filed October 5, 1896, $1,000 to each of the five children of David Starr, and $1,000 to Margaret L. Tobias, and the residue of $2,682.51 to said David Starr.

The claim made by the legatee against David Starr, surviving executor, is for the sum of $1,152.50 with interest from September 6, 1884. The claim cannot be allowed to this extent. In the first place, the legatee, according to her own testimony, received the valuable package into her custody and control shortly after the death of the testator and voluntarily returned it to the custody and control of the coexecutrix, where it remained until her death. Up to this time it was not in the custody or control of David Starr, the surviving executor. If it were in the custody and control of the coexecutrix, with or without the consent of the legatee, David Starr cannot be held to have been culpable or negligent: Fesmire's Estate, 134 Pa. 67. But from the time the valuable package came into his custody and control, at least from the time the legatee made demand on him, to wit: November 8, 1895, he is liable for interest.

Now, January 10, 1898, it is ordered and decreed that David Starr, surviving executor of Peter Starr, deceased, be charged as follows:

| | | |
|---|---:|---:|
| To the sum of . . . . . | | $1,152 50 |
| To interest on same from November 6, | | |
| 1895, to date . . . . | | 149 82 |
| | | $1,302 32 |
| Deduct fee to be paid clerk O. C. | $ 2 50 | |
| Deduct collateral inheritance tax | | |
| due commonwealth . . | 44 50 | |
| Deduct filing account . . . | 8 00 | 55 00 |
| Balance . . . . | | $1,247 32 |

That the amount be paid to Margaret L. Tobias, legatee under the will of the decedent.

Subsequently the court deducted the collateral inheritance tax on the legacy leaving a balance of $1,209.82.

*Errors assigned* were in overruling exceptions to adjudication.

*George W. Ryon,* with him *James Ryon,* for appellant.

*George M. Roads,* for appellee.

PER CURIAM, February 27, 1899 :

The decree, as corrected by the court below, showing balance of twelve hundred and nine dollars and eighty-two cents ($1,209.82) payable to Margaret L. Tobias, legatee under the will of Peter Starr, deceased, appears to be fully sustained by the facts properly found by the learned auditing judge. A careful consideration of the somewhat voluminous evidence has failed to convince us that there is any substantial error in either of his findings of fact, so far at least as they have any bearing on the matters in controversy. There is nothing in any of the twenty-four specifications of error to justify either reversal or modification of the decree ; nor do we think that either of them requires discussion. It would be a useless waste of time to consider them in detail. Neither of them is sustained.

Decree affirmed and appeal dismissed at appellant's costs.