MAX C. DEGEN, Appellant, Respondent, v. MEIER STEINBRINK and MARCELLA T. McKINNEY, as Executrix, etc., of ALEXANDER McKINNEY, Deceased, Respondents, Appellants.

First Department, July 14, 1922.

**Attorney and client — duty of attorney engaged to prepare chattel mortgages on property in foreign State — attorney liable to client if mortgages prepared are not valid liens — bankruptcy of mortgagor — amount received from sale by receiver of property agreed to be covered by mortgages less dividend as general creditor is amount of damages — burden on attorney to show any deduction from said amount.**

It is the duty of an attorney who undertakes for a client to draw chattel mortgages on property located in another State, to so prepare the documents that they are valid and effective liens upon the property where located, and if by reason of his lack of compliance with the simple statutory requirements of the foreign jurisdiction, the documents have no legal potency, there is such a negligent discharge of his duty to his client as renders him liable for loss sustained by reason of such negligence; the attorney cannot defend on the theory that he is not supposed to know the law of a foreign State.

Accordingly, where an attorney was engaged to prepare chattel mortgages covering property located in another State, and thereafter the mortgagor went into bankruptcy and it was then determined that the mortgages were invalid, the attorney is liable to his client who had guaranteed a loan and credit made to the mortgagor, for the difference between the amount received as a general creditor and the amount secured by the alleged mortgages.

Where, after the intervention of bankruptcy and before it was determined that the mortgages were invalid, it was agreed between the parties interested that the property should be sold and that the proceeds realized from certain of the properties thus sold was subject to the mortgages, such amount, less the dividend received as a general creditor, reduced by the proportionate amount of the dividend produced by the sale of assets not covered by the mortgages, *prima facie*, is sufficient proof of the damage, and, if there is anything that would legally reduce that amount, the burden of going forward with the evidence is upon the defendants.

CROSS-APPEALS by the plaintiff, Max C. Degen, and by the defendants, Meier Steinbrink and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of September, 1920, upon the report of a referee appointed to hear and determine the issues.

The grievance of the plaintiff is that the judgment was for a less amount than it should have been, and the grievance of the defendants is that any judgment should have been entered against them.

*Eidlitz & Hulse [Frederick Hulse* of counsel], for the plaintiff.

*Frank E. Johnson [William D. Guthrie* of counsel], for the defendants.

Page, J.:

The action was originally against the members of a firm of attorneys with offices in the borough of Brooklyn. One of the members of the firm has since died and his executrix has been substituted as a party defendant. For convenience we will in this opinion refer to the original parties as defendants. The action was brought by the assignee of a client of the firm, one Silas W. Stein, an uncle of the surviving member of the firm. The facts of the case briefly stated were as follows: Stein was a dealer in horses and for many years had sold horses to the Fuller Express Company. The Fuller Express Company desired to borrow $15,000. Stein asked Levy Brothers, who were hay and feed dealers, to make the loan and they agreed to do so on condition that the Fuller Express Company would agree to buy hay and feed from them, and that Stein would guarantee the payment of the $15,000 loan and a credit of $5,000 which Levy Brothers were to extend to the Fuller Express Company. Stein was willing to guarantee the loan providing it was secured by chattel mortgages covering all their horses, wagons, harnesses, stable equipment, etc. The property was in three States, New York, New Jersey and Connecticut. Stein called on the defendants and explained the transaction and employed them to act as his attorneys at law in connection therewith, for fees which were duly paid. The parties to the transaction met at the defendants' office with their attorneys, the defendants representing Stein, and the defendants prepared the papers which consisted of three chattel mortgages, one covering the property in New York which was to be filed in New York county, one in New Jersey covering the property in that State, and one in Connecticut; agreement between the Fuller Express Company and Levy Brothers, whereby the express company agreed to purchase its grain and feed from Levy Brothers for two months; and the instrument whereby Stein guaranteed the payment of the $15,000 loan and the $5,000 credit; and the various instruments were subsequently signed, and the chattel mortgages were filed in the proper offices by the defendants. Of these instruments, the three chattel mortgages were of the greatest importance to Stein, as a security for the loan that he had guaranteed. The note evidencing the loan was payable in sixty days and was renewed from time to time, during which the Levys telephoned to the now surviving member of the firm, who had various interviews with Stein, and the matter of extensions was arranged. Stein was very angry at the continuance of the loan, but his nephew explained to him the legal effect of his obligation. When the year was about to expire, the defendants prepared three copies of the chattel

mortgages with the statement required by section 235 of the Lien Law, which were sent to Levy Brothers to be executed, and were received by the defendants, and the copies of the New Jersey and Connecticut mortgages were sent to the proper officers, who returned the same to defendants, informing them that it was not necessary to file such copies and statement under the laws of those States. There was some controversy as to who filed the copy in New York county. The referee, however, has held that the defendants did. In the early part of December, 1915, Stein informed the surviving member of the defendants' firm that the Fuller Express Company had been petitioned into bankruptcy, and consulted him with reference to the protection of Stein's interest. The defendants then took up the matter of a speedy sale of the horses with the receiver in bankruptcy of the company and a Federal judge, as a result of which an agreement was entered into between the said receiver, Levy Brothers, Stein and the express company, whereby it was agreed that the several Federal courts might make orders directing the sale of the mortgaged property, and that the proceeds of the sale be substituted in the place of the said property, and the lien, if any, of said chattel mortgages attach to said proceeds and be kept as a special fund, separate and apart from the other funds of the estate, pending a judicial determination of the validity of said mortgage and the extent of the lien and priority thereof, if any. This agreement was prepared by the defendants and was carried into effect by judicial decrees. The sales were had and one of the defendants, or a representative from their office, attended the sale and made notes thereof. The total amount realized upon the sales was $19,576.65. After a consultation between the trustee in bankruptcy of the express company and counsel representing the defendants, in which certain deductions were made, it was agreed that the sum of $15,037.68 was the amount to which Levy Brothers were entitled as representing the property on which the chattel mortgages were a lien. The counsel went over these figures with the defendants and they agreed that the matter should be consummated as had been arranged. A hearing was had before the referee in bankruptcy and this amount was allowed and the referee announced that an order might be made to pay that sum over to Levy Brothers. Before the order could be prepared, the trustee sent word that he had discovered that the chattel mortgages were invalid, a further hearing was had before the referee, and an order was made declaring the mortgages invalid upon the following grounds: " 1. That the New York mortgage is invalid as against this estate because the first renewal thereof, filed in the office of

the Register of the County of New York on the 30th day of October, 1914, did not have endorsed thereon the number and date of filing of the original mortgage. 2. That the New Jersey mortgage is invalid as against this estate because the acknowledgment of the execution thereof was defective. 3. That the New Haven mortgage is invalid against this estate because the Laws of Connecticut did not permit the mortgaging of the chattels therein set forth." Thereupon the fund which had been agreed upon to be set aside as a substitute for the property went into the general estate of the bankrupt, and Levy Brothers received as a general creditor a dividend of $6,852.42. The difference between this sum and $15,037.68, together with $750 paid to the defendants as counsel fees in the bankruptcy proceeding, is claimed by the plaintiff as damages in this action. The issues in the action were sent to a referee to hear and determine.

The referee found that the defendants were not responsible for any failure of the acknowledgment of the New Jersey mortgage; that their duty was fully discharged by sending the mortgage, as prepared and executed, to the proper officers in New Jersey for recording therein, nor were they responsible for the failure of the Connecticut mortgage to create a lien upon any property in that State, because of the fact that by the laws of Connecticut no lien could be created upon property of the nature covered by the chattel mortgage, without a delivery of the property to the mortgagee. He did find, however, that it was the duty of the defendants to continue the New York mortgage, by filing a copy thereof with the proper indorsements and the statement required by the statutes of this State, and that the document filed by them was insufficient for that purpose, and that plaintiff's assignor sustained damages by such failure; but that the plaintiff was only entitled to nominal damages, as no competent evidence was offered that any of the property covered by the chattel mortgage upon the New York property was received by the receiver or the trustee in bankruptcy. He gave judgment for the $750 paid as counsel fee in the bankruptcy proceeding.

The basis of the decision of the learned referee in his opinion and findings, exonerating the defendants for the loss sustained by their failure to draw mortgages that upon filing would give Levy Brothers a valid lien on the property in the foreign States, was that a New York lawyer was not presumed to know the statute law of another State, and so long as the officials accepted the instruments for filing, that relieved the defendants from any imputation of negligence.

The defendants were employed to draw these chattel mortgages

and to do whatever was necessary to give a valid and subsisting lien upon the property of the express company. These mortgages were the only security by which their client was protected for his guaranty.

The law governing the creation of liens on personal property by chattel mortgages is statute law. This every lawyer should know, and further, that the statute law of one State usually differs from the statute law of another, as to form of the instrument, as to the form of acknowledgment, and as to other requirements. When a lawyer undertakes to prepare papers to be filed in a State foreign to his place of practice, it is his duty, if he has not knowledge of the statutes, to inform himself, for, like any artisan, by undertaking the work, he represents that he is capable of performing it in a skillful manner. Not to do so and to prepare documents that have no legal potency, by reason of their lack of compliance with simple statutory requirements, is such a negligent discharge of his duty to his client as should render him liable for loss sustained by reason of such negligence. (*Byrnes* v. *Palmer*, 18 App. Div. 1; affd., 160 N. Y. 699.) It would be a very dangerous precedent to adopt in this State, where by reason of its being the financial center of the Union, members of the bar are called upon to advise as to large loans, and to draft instruments securing such loans, that must be filed or recorded in other States, that attorneys could escape liability for unskillful and negligent work, which had rendered the securities worthless, and could shield themselves behind the plea, " I am a New York lawyer; I am not presumed to know the law of any other State." If the attorney is not competent to skillfully and properly perform the work, he should not undertake the service. The defendants were not employed to prepare instruments that might be filed with officials, but such instruments that when so filed would be legally binding and effective for the purpose contemplated.

In regard to alleged lack of proof of damage, the plaintiff proved that in the bankruptcy proceeding it was agreed by and with the counsel and consent of the defendants that of the assets of the bankrupt which were sold, property which realized $15,037.68 was subject to the chattel mortgages, and if the mortgages had been valid that sum would have been paid over to Levy Brothers, and the debt for which Stein was guarantor would have been reduced by that amount. This sum, less the dividend which Levy Brothers received as a general creditor, reduced by the proportionate amount of the dividend produced by the sale of the assets that were not covered by the mortgages, *prima facie*, is sufficient proof of the

31

damage, and in the absence of other proof would be sufficient to sustain a judgment for that amount. If there was anything that would legally reduce that amount, the burden of going forward with the proof was upon the defendants. It was not necessary for the plaintiff to prove that each horse, wagon, strap of harness or currycomb that was in existence at the time the mortgages were made and filed were in existence and sold in the bankruptcy proceeding.

The judgment and findings should be reversed and a new trial granted before another referee (Civil Practice Act, § 464), with costs to the plaintiff to abide the event. Settle order in which may be included the name of the referee, if the parties by stipulation can agree.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Judgment reversed and new trial ordered before another referee, with costs to plaintiff to abide event. Settle order on notice.