## Lohm Estate.

Argued November 21, 1969.   Before Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Charles D. Coll,* for appellants.

No oral argument was made nor brief submitted for appellees.

Opinion by Mr. Justice Jones, October 9, 1970:

Robert P. Lohm died on April 25, 1965, leaving a will wherein Ralph S. Kunst, Jr. (a nephew)[1] and E. T. Adair, Esq., were appointed co-executors.   Although he had been practicing law since 1911, Adair had had very little experience in the administration of estates

---

[1] Kunst was also the beneficiary of approximately 51% of the total estate.   The value of the estate being one million dollars.

and no experience whatsoever with federal estate tax problems. Accordingly, Adair and Kunst retained Alexander Rosenbaum, Esq., experienced in estate tax matters, to serve as an additional counsel for the estate.

The federal estate tax return, the preparation of which was to be Rosenbaum's major task, was due to be filed on or before July 25, 1966. This return had to be filed by that time in order for the estate to take advantage of the "alternate valuation date" in evaluating for federal estate tax purposes the securities which constituted the bulk of the estate. Adoption of this alternate date required the evaluation of the securities as of April 25, 1966, so that, practically speaking, Rosenbaum had three months from that date within which to prepare and file the return.[2]

On May 10, 1966, Rosenbaum was hospitalized for surgery, he was released on May 27, 1966, and went back to work in June of 1966.[3] The federal estate tax return was not filed until *November 15, 1966*. The four-month delay in filing prevented the estate from utilizing the "alternate valuation date" so that all the securities had to be evaluated as of the date of the testator's death which resulted in a substantial tax loss. The amount of this loss is still uncertain on the face of this record. The lower court computed a federal estate tax loss of $30,389.92, plus interest, and a Pennsylvania estate tax loss of $5,431.64, plus interest. The executors claim a loss of only $16,315.59 in federal taxes and no Pennsylvania tax loss, and have appealed

---

[2] Adair, who, assuredly lacked knowledge of federal estate tax law, assigned such lack of knowledge as the reason why Rosenbaum was retained to prepare the return.

[3] Testimony as to the date of Rosenbaum's return was conflicting. Adair, whose office was adjacent to Rosenbaum's, said it was June 1, 1966; Rosenbaum said he returned June 20, 1966, in either case, the tax deadline was still *at least* five weeks away when Rosenbaum went back to work.

the federal tax assessment to the United States Tax Court which appeal was still pending when the instant appeal was argued.

On March 1, 1967, Adair and Kunst filed their "First and Final Account," which listed, *inter alia,* an attorney's fee, paid to Rosenbaum, of $22,285.45,[4] and executors' commissions of $21,838.78 each, or a total of $43,677.56, paid to Adair and Kunst. No counsel fee had in fact been paid to Rosenbaum, and he filed exceptions to the account, alleging non-payment of the listed attorney's fee and requesting $23,500.00 as payment for his services as co-counsel for the estate. On April 13, 1967, the executors amended their account by deleting the claimed credit for Rosenbaum's attorney fees, and Rosenbaum's non-payment exception was dismissed.

In May of 1967, hearings were held in the Orphans' Court of Allegheny County to determine the validity of Rosenbaum's claim for a counsel fee of $23,500.00. The hearings dealt primarily with the question of who was responsible for the large tax loss to the estate, *i.e.,* who was responsible for the four-month delay in filing the federal estate tax return. The lower court determined that Adair, Kunst and Rosenbaum were equally and jointly at fault, and that their negligence had cost the estate $35,821.56, plus interest, in additional federal and Pennsylvania taxes. The court, finding that the minimum attorney's fee for an estate such as this would be approximately $23,500.00, awarded a fee of $5,000.00 to Rosenbaum, and directed that no counsel fee was to be paid to Adair.[5] The lower court also stated that the minimum executor's fee for this estate would

---

[4] Adair and Rosenbaum had agreed to share this attorney's fee on a 60-40 basis. There presently exists a controversy between them as to who was to receive the 60% portion of this joint fee.

[5] A fee of $7,500 was allowed by the court and paid to C. D. Coll, Esq. Attorney Coll was engaged as co-counsel for the estate

normally have been $30,000.00 but, in view of the circumstances, awarded executors' fees of $15,000.00 to Adair and Kunst jointly, to divide as they might see fit.

We have before us an uncontested appeal by Adair and Kunst from the decree, as outlined above, of the Orphans' Court Division of the Court of Common Pleas of Allegheny County.[6]

A fiduciary is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate. *Lerch Estate,* 399 Pa. 59, 65, 159 A. 2d 506, 509-10 (1960). Of course, if he has *greater* skill than that of a man of ordinary prudence, then the fiduciary's standard of care must be judged according to the standard of a man with his special skill. *Mastria Estate,* 413 Pa. 278, 281, n. 3, 196 A. 2d 653, 655, n. 3 (1964); *Glauser Estate,* 350 Pa. 192, 196, 38 A. 2d 64, 66-67 (1944). Accordingly, Adair being an attorney and Kunst being a layman, it is reasonable to require Adair to comply with a higher standard of care than Kunst, but a lesser standard of care than Rosenbaum who, admittedly, had a great deal of experience with the types of tax problems which arose in this estate.

It is well-settled in this Commonwealth that a fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss. *E.g., Mastria Estate,* 413 Pa. 278, 196 A. 2d 653 (1964); *Horner v. First Pa. Banking & Trust Co.,* 412 Pa. 72, 194 A. 2d 335 (1963). A court which has been re-

---

after the federal estate tax problems and the consequent dispute arose. He was not involved in any manner in the tax loss.

[6] None of the legatees filed exceptions to the accounting, although the executors have kept them informed as to the proceedings. The only parties to the instant action have been Kunst, Adair and Rosenbaum.

quested to approve an amount of compensation for a fiduciary or his counsel *sua sponte,* may pass upon the reasonableness of the compensation claimed and, where appropriate, impose a surcharge by way of awarding a fee which is less than the customary minimum for an estate of that size. *Thompson Estate,* 426 Pa. 270, 232 A. 2d 625 (1967).

Moreover, in this area of the law involving fixing of executor's commissions and counsel fees we will not disturb the action of the court below in the absence of an abuse of discretion or an error of law. *Wallis Estate,* 421 Pa. 104, 218 A. 2d 732 (1966); *Jones Estate,* 400 Pa. 545, 162 A. 2d 408 (1960).

Furthermore, in our present determination, it is appropriate to point out that "[w]e are fully aware of the principle well settled in this area of the law that those who seek to surcharge a fiduciary for breach of trust must bear the burden of proving the particulars of his wrongful conduct." *Maurice Estate,* 433 Pa. 103, 107, 249 A. 2d 334, 336 (1969). Nevertheless, where a large overpayment in taxes has been shown, such as in the case at bar, the burden then shifts to the fiduciary to present, if possible, exculpatory evidence and thereby avoid the surcharge. *Id.* at 108, 249 A. 2d at 336.

Adair, Kunst and Rosenbaum all testified extensively at the hearings which were held by the court below, and our present task is to determine whether any or all of these three appears to have been innocent of the supine negligence for which each has been held, in varying degrees, responsible.

This Court will normally not disturb the findings of fact made by the hearing judge, *unless* those findings are either without support on the record, or have merely been derived from other facts. *Lerch Estate,* 399 Pa. 59, 66 n. 1, 159 A. 2d 506, 510 n. 1 (1960) (and cases cited therein). Applying this guideline to the case at

bar, we must agree with the lower court's deduction "that both Co-Executors and Attorney Rosenbaum were all equally and jointly at fault. . . ."

The defense relied upon by Adair and Kunst was that they had no knowledge of the federal estate tax regulations, and that they relied entirely upon the advice of their counsel, Rosenbaum, for this aspect of the estate administration. The effect of relying upon the advice of counsel under these circumstances is well-settled in Pennsylvania. "Where a fiduciary acts upon the advice of counsel, such fact is 'a factor to be considered in determining good faith, but is not a blanket of immunity in all circumstances': [citing cases]." *Vandergrift Estate*, 406 Pa. 14, 37, n. 14, 177 A. 2d 432, 443, n. 14 (1962). There are two aspects to this "factor" which must be weighed in deciding whether the fiduciary may defend against a surcharge attempt on the basis of reliance upon the advice of counsel. The initial choice of counsel must have been prudent under all the circumstances then existing, and the subsequent decision to rely upon this counsel must also have been a reasonably wise and prudent choice. *Vandergrift Estate, id.* at 37-38, 177 A. 2d at 443; *Stirling's Estate,* 342 Pa. 497, 503-04, 21 A. 2d 72, 75-76 (1941) (and cases cited therein). *See generally Restatement (Second) of Trusts* § 225 (1959); Scott on Trusts § 201 (1939).

The evidence clearly establishes the propriety of the initial decision by Adair and Kunst to retain Rosenbaum. Adair lacked the necessary experience to do the work himself, and Rosenbaum had been practicing law for thirty-five years, had a Treasury card, and was thoroughly familiar with federal estate tax regulations. In addition, Rosenbaum had prepared the federal estate tax return for Adair in another matter, and had done a completely adequate job. Accordingly, we find that the executors acted properly when they retained Rosen-

baum as an additional attorney for this estate. The second aspect of this problem is whether either or both of the co-executors acted in such a way, with respect to the late filing of the return, as to relieve him of both liability for the consequences of this admittedly improper act.

Our examination of the instant record convinces us that both Adair and Kunst, acting in their fiduciary capacity, were guilty of supine negligence which contributed to the tax loss suffered by the estate. Both men should have been aware of, or, at least, should have taken steps toward ascertaining *when* the federal estate tax was due. Even though Adair was inexperienced in fiduciary estate tax matters and Kunst was a layman unversed in the law, it was their duty as executors of the estate to ascertain the crucial date when the return should have been filed. The record shows that neither Adair nor Kunst made any effort to ascertain such date. A prudent man may not have the technical knowledge or skill to prepare an estate tax return or even an income tax return, and so would properly rely on one more knowledgeable. But a prudent man in the conduct of his own affairs would certainly know that there is *a time when a tax return must be made and a time when a tax is due and payable,* and, if he did not know what those times were, he would find out. No one files his own death tax returns, but the majority of us file other tax returns of one sort or another. What "prudent man" is there who does not know that April 15 is the normal date by which individual federal income tax returns must be filed and the tax paid? We have difficulty in comprehending how, in this tax conscious age, an executor of an estate can with impunity be or remain ignorant of the *time* for filing tax returns or paying the taxes in the estate he is managing. The need to schedule the payment of bills, to plan for advance and final distribu-

tions, to do what is necessary to meet cash requirements by sales of assets or otherwise, to prepare for the time a final account can be filed and an estate can be wound up,—indeed all the principal aspects of an executor's job—are related in a significant way to the time for the payment of taxes, be they state or federal or both, and to some approximation of the amounts thereof.

Both executors in this case testified they did not know the time for filing the federal estate tax return, or the penalties for late filing. Assuming, *arguendo,* that such ignorance did exist, we fail to conclude that this ignorance is completely excused by reliance on a lawyer believed to be an expert. The matter of missing a tax return due date, a pivotal factor in connection with the administration of the entire estate, is not an error of law or of judgment for which the entire blame can be shifted to the expert. This was not a matter of acting on advice of counsel; it was a matter of neither knowing nor seeking to ascertain a key fact in the proper performance of a fiduciary function voluntarily undertaken.

The problem then presents itself to determine the fees, if any, which should have been awarded to Adair and Kunst, a determination which requires the consideration of a number of factors by the lower court, which is normally in a better position than this Court to fix a reasonable amount of compensation. *See Thompson Estate,* 426 Pa. 270, 232 A. 2d 625 (1967) ; *Wallis Estate,* 421 Pa. 104, 218 A. 2d 732 (1966). In the case at bar, the lower court has already determined that the minimum fees for executors for an estate such as this would be $30,000. Under record facts, the court below could have awarded either no fees at all or fees even less than the $15,000 awarded. In the matter of commissions for executors much is left to the discretion of the court below and, absent an abuse of that discretion or the commission of an error of law, a court at

278

the appellate level will not disturb the fees set. We find no such abuse of discretion nor any error of law and we, therefore, affirm that portion of the decree of the court below which awarded Adair and Kunst $15,000 as executors' commissions, to be divided as they see fit.

The court below awarded a fee of $5,000 to Rosenbaum but awarded no fee to Adair. The award of counsel fees presupposes not only that legal services were performed, but that they were performed satisfactorily. The character of the services rendered by an attorney and the nature of the results obtained are factors crucial to the determination of his compensation. *LaRocca Estate*, 431 Pa. 542, 546, 246 A. 2d 337 (1968). In the case at bar, Mr. Adair engaged co-counsel for the purpose of preparing and filing the federal return. By reason of the untimely filing, the estate has incurred a loss which *at a minimum* exceeds (by $315) the fund available for the compensation of both lawyers.[7] The question, therefore, is whether any part of that loss should be borne by the estate and its beneficiaries so that counsel for the estate at the time the loss was incurred may receive compensation. We do not see how distinction can be made, or should be attempted, between the lawyer who was negligent and the lawyer who was ignorant. While we recognize that "no attorney can be expected to be familiar with every aspect of the law," yet if an attorney is not competent to perform work properly he should not undertake the service. See in general 7 Am. Jur. 2d §167 et seq.; compare Rule DR 6-101, Code of Professional Responsi-

[7] Accepting the lower court's determination that $23,500 would be the normal and reasonable minimum legal fees for an estate of this size, the deduction therefrom of the undisputed fee already allowed and paid to Attorney Coll results in a $16,000 balance which would be available for remaining legal fees, absent the errors in administration here present.

bility of the American Bar Association (now in force in this Commonwealth: Pa. R.C.P. Rule 205) ; *Degen v. Steinbrink,* 202 App. Div. 477, 481, 195 N.Y.S. 810, 814 (1922). Here Mr. Adair was co-counsel, and we think he should not be able to cast the entire burden of the mistake on his other co-counsel at the expense of the estate. That is to say, the two attorneys, *like* two partners, should stand jointly and severally liable to the estate, and the estate should be made whole before counsel fees are allowed to either lawyer.   The $16,000 balance which normally would be available for attorney's fees would thus be available to offset the minimum loss of approximately the same amount.   Should the federal tax loss eventually be determined in the federal courts to exceed the figure of $16,351 conceded by appellants, and should there be a consequent Pennsylvania estate tax deficiency, separate proceedings might be brought to recover a personal judgment against the responsible party or parties.[8]

Our examination of the instant record convinces us that the decree of the court below awarding no counsel fee to Adair was proper but that its award of a fee of $5,000 to Rosenbaum was improper under the circumstances.

Decree, as modified, affirmed.   Appellants to pay costs.

Mr. Justice O'BRIEN and Mr. Justice ROBERTS dissent and would affirm the chancellor's decree without modi-

---

[8] The terms of the fee sharing agreement between Adair and Rosenbaum should not be the subject of a subsequent hearing or a determination by the Orphans' Court Division as part of the proceedings in this estate.   The dispute between them as to who is to receive 60% and who 40% is a private one, the settlement of which is not properly part of the administration of this estate. *Compare, Purman Estate,* 358 Pa. 187, 191, 56 A. 2d 86 (1948) and *Murphy's Estate,* 258 Pa. 38, 44, 101 A. 935 (1917).

280

fication, finding record support for the chancellor's result and no abuse of discretion.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.