## Bireley Estate

*Norman J. Pine,* for the accountant.
*Mary Wade Myers,* for the objectants.

GAWTHROP, III, *J.*, August 15, 1980—This matter comes before us upon exceptions and objections to the first and final account of Roy T. Bireley, Executor, which objections were filed by the four residuary legatees under the will of Edmund M. Bireley, deceased. Objectants allege that the fees paid to the executor and to the attorney for the estate are excessive and unreasonable, and further, that the executor failed to discharge his duty to invest prudently the proceeds of the estate pending final distribution. Accordingly, objectants seek an award of reasonable executor's commission and attorney's fees, with repayment of sums paid in excess of those amounts, as well as a surcharge to the executor and attorney in an amount equal to the interest which would have accrued on said proceeds from the time of their receipt, had they been invested in an interest-bearing savings account.

The attorney and executor, in their answer to the objections, assert that the fees in question are reasonable, that the executor was under no duty to invest the proceeds of the estate, and further, that $2,600 and title to testator's car are owing to executor under a specific bequest in the will.

## FACTS

Edmund M. Bireley died testate on September 3, 1977. In his will, he provided for payment of his just debts and funeral expenses, bequeathed the automobile he owned at the time of his death to his brother, Roy T. Bireley, and directed that the remainder of his estate be divided equally among four legatees, objectants herein. Roy T. Bireley was named executor.

The car bequeathed to Roy T. Bireley was destroyed in the accident in which testator died. The estate received $2,600 for the damage to the car un-

der an insurance policy, and title to the car was transferred to the insurer. At the time of his death, testator owned interest in two tracts of real estate, one of which was sold on December 1, 1977, for $26,044.77. This amount was deposited in a non-interest-bearing checking account at Central Penn National Bank along with other estate funds.

Final account and distribution of the estate were delayed on advice of the executor's attorney. The reasons cited for delay were the threat of litigation arising from testator's fatal accident, and continuing efforts to sell the second tract of real estate. No tort action was ever filed against the estate; efforts to sell the real estate were unsuccessful.

The amount of the gross estate is $40,597.26. From the time of the sale of the real estate on December 1, 1977, until the present, the bulk of the estate assets have been retained in the Central Penn checking account on advice of counsel. The average monthly balance in this account was approximately $30,000.

Roy T. Bireley was paid an executor's commission of $3,100, which is 7.6 percent of the gross estate. In conjunction with his claim for the insurance proceeds from testator's car in his answer to the objections and exceptions, the executor states that three percent of the gross assets of the estate would be reasonable compensation for his services in the administration of the estate.

The executor's attorney received $3,550 in attorney's fees.* At the hearing in this matter, executor's attorney testified that his usual charge for this type of work is $55.00 per hour, and that he spent an es-

---

* There is some question whether $300 of this amount which appears on the first and final account was actually received by counsel for the executor.

timated 45 hours on this case, although he kept no record of actual time spent.

## DISCUSSION

Our analysis begins with the relevant provision of the Probate, Estates and Fiduciaries Code, Section 3316, Investment of Funds, which reads in pertinent part: "Subject to his duty to liquidate the estate for prompt distribution and to the provisions of the will, if any, the personal representative may invest the funds of the estate but shall have no duty to do so . . ." 20 Pa. C.S. §3316. The case law interpreting this provision and its precursors has engrafted to that precatory language an actual duty to invest otherwise idle estate funds when administration of an estate is delayed. See; Pitone Estate, 489 Pa. 60, 413 A.2d 1012 (1980); Lare Estate, 436 Pa. 1, 257 A.2d 556 (1969); Jones Estate, 400 Pa. 545, 162 A.2d 408 (1960); Lloyd's Estate, 82 Pa. 143 (1876). Our Supreme Court commented on this duty in Kohler Estate, 348 Pa. 55, 33 A.2d 920 (1943), wherein it states:

"The duty of an executor generally is not to retain and invest, but to liquidate and terminate . . . If, however, a valid reason exists for the retention of a fund by the executor, it is incumbent upon him not to permit such fund to remain idle, but to invest it, and if there is default in this regard, he is chargeable with lawful interest thereon." [Cites omitted]. 348 Pa. at 57.

In the case before us, there is no real quarrel over the reasonableness of delay. We need only consider the disposition of funds during that delay.

The duty to invest idle funds has been affirmed repeatedly by Pennsylvania courts. The general rule is that an executor must "use such common skill,

prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate." Lohm Estate, 440 Pa. 268, 273, 269 A.2d 451 (1970). Failure to deposit funds in an interest-bearing account constitutes a breach of this duty of care. Carson Estate, 14 Fid. Rep. 420 (1964); Lare estate, supra.

In Carson Estate, supra, the executor was surcharged an amount equal to the reasonably expected interest which would have accrued upon investment of the estate funds in a savings account. Likewise, in Lare Estate, supra, an executor retaining estate funds in a non-interest-bearing account was held to have failed to "exercise . . . common skill, common prudence and caution which is the basic standard and requirement for every fiduciary." 436 Pa. at 10.

In the case before us, the bulk of the estate funds were retained in a non-interest-bearing checking account from the time of the sale of the estate's major assets on December 1, 1977, to the present. There is no indication that the choice of a checking rather than savings account was justified by the need for immediately available funds; rather, the record shows little activity in the account, with monthly balances consistently close to $30,000, the approximate average balance. A prudent person would not allow so substantial a sum to remain idle for so long a time. If one wished neither to consume nor actively invest the balance, one would at least deposit it in a savings account where it could earn passively a modicum of interest, without any loss in liquidity. This consideration is especially significant in light of current inflation rates.

The recent case of Pitone Estate involved facts much like those at bar. There, a balance of $6,000. in estate funds was allowed to remain idle in a non-

interest-bearing checking account for three years. The court stated that:

"Where . . . administration of an estate is delayed for an extended period of time, it is incumbent upon the personal representative to invest the funds and not to permit them to remain idle. Where a personal representative breaches this duty, she may properly be surcharged for appropriate interest." 413 A. 2d at 1016.

Accordingly, we find that Roy T. Bireley had a duty to exercise common prudence and caution by investing estate funds in an interest-bearing account. He failed to discharge this duty and we find him liable to the estate for the amount of interest lost.

Mr. Bireley seeks to avoid liability for the lost interest by claiming reliance on the advice of his attorney, Mr. Pine, in handling the estate funds. We note that it is well-settled in Pennsylvania that "Where a fiduciary acts upon the advice of counsel, such fact is 'a factor to be considered in determining good faith, but it is not a blanket of immunity in all circumstances'." Lohm Estate, 440 Pa. 268, 275, 269 A.2d 451 (1970), quoting Vandergrift Estate, 406 Pa. 14, 37, n. 14, 177 A.2d 432, 433, n. 14 (1962). The court in Lohm went on to delineate two factors to be weighed in deciding whether a fiduciary may avoid a surcharge on the basis of reliance upon the advice of counsel: "The initial choice of counsel must have been prudent under all the circumstances then existing, and the subsequent decision to rely upon this counsel must also have been a reasonably wise and prudent choice." [Cites omitted]. 440 Pa. at 275. In analyzing the second factor, the Lohm court determined that a prudent man in handling his own affairs would ascertain the due date for filing taxes and that no legal expertise was re-

quired to determine that fact. Consequently, the court found that the executor's reliance on the advice of two attorneys retained by him in this matter, one of whom was retained especially for the tax considerations, was not reasonable and prudent, and therefore held the executor liable for losses to the estate resulting from the untimely filing of estate taxes.

At bar, we find no fault with Mr. Bireley's choice of attorney to aid in the administration of the estate, as his counsel is a member in good standing of the Pennsylvania bar. However, we do not reach the same result on the second factor of the Lohm analysis. The prudence of investing idle funds in an interest-bearing account is a fundamental fact in the everyday management of money. If the breach of duty at bar involved some question of law exclusively within the expertise of the attorney upon whom Mr. Bireley relied in good faith, we would not hesitate to relieve Mr. Bireley of liability. However, the issue at hand requires no legal expertise, but only an awareness chargeable to any layman, that idle, unproductive funds should be deposited in an interest-bearing savings account. We cannot find reason to excuse executor's negligence in so fundamental a matter.

In holding Mr. Bireley responsible for this loss to the estate, we do not relieve Mr. Pine of liability. Throughout the administration of this estate, Mr. Bireley has consistently relied on advice of counsel. Carelessness of counsel resulting in loss to the estate has repeatedly been grounds for the imposition of surcharge and denial of attorney's fees. Lare, supra, Jones, supra, Carson Estate, supra. We do not find an excuse for executor's counsel's negligence in the fact that the advice herein relied upon was so patently imprudent that we penalize the layman executor for following it.

We note that there need be no showing of fraud, self-dealing or other impropriety in finding liability for failure to invest. Lare, supra. In so stating, we emphasize that no fraud or self-dealing whatsoever has been averred or alluded to at bar. Objections allege simple negligence. We agree.

We next address the issue of the amount of compensation, if any, to be awarded to the attorney and executor for their services in the administration of the estate. First, we shall determine the reasonable fees to which they would have been entitled in the absence of the negligent loss of interest on estate funds.

Mr. Bireley, in his answer to the objections and exceptions, has made this task easy for us. He has admitted that an executor's commission of three percent of the gross estate would be reasonable compensation for his services. Accordingly, we reduce the amount of Mr. Bireley's commission to three percent of the gross estate, or $1,217.92.

In determining a proper attorney's fee in this matter, we are persuaded by the counsel for the executor's testimony concerning his usual hourly rate in such matters, and his estimate of actual time expended. Executor's counsel testified that he received fees as high as $100 an hour for some types of municipal work, and that he charged $75 an hour for other work. However, taking into consideration the nature of the work required in the administration of this estate, and the lack of success of his efforts to sell the second tract of real estate, he set a reasonable rate for his services at $55 per hour. Although executor's counsel kept no records of actual time spent on this case, we accept his estimates as reasonable in light of the issues involved in this case.

Accordingly, we find a fee of $55 per hour for 45 hours, or $2,475, to be appropriate and reduce the attorney's fee to this amount.

We next consider the effect of the attorney's and executor's negligence on their fees. Preliminarily, we note 20 Pa. C.S. §3544 which reads:

"A personal representative who has committed a breach of duty with respect to estate assets shall in the discretion of the court, be liable for interest, not exceeding the legal rate on such assets."

Accordingly, we hold both the executor and the attorney liable for lost interest on the balance of the estate checking account from December 1, 1977, to present. We find support for dividing the surcharge between the executor and his attorney in Lohm Estate, supra, wherein the court imposed a surcharge for losses for untimely filing of estate taxes on the executor and the two attorneys retained by him.

Finally, we address the issue of the specific bequest of testator's automobile to Roy T. Bireley. The questions before us are whether Mr. Bireley is entitled to the insurance proceeds, the wrecked auto itself, or whether the bequest was adeemed by destruction of the car. In resolving this issue, we initially note conflict in the few cases on point. We choose to follow the reasoning in Nothstein's Estate, 28 D.&C. 2d 315 (1962).

In Nothstein and at bar, testator died in the accident which destroyed the car specifically bequested in the will. The testator had no opportunity to change his will following destruction of the car, and it must be presumed that he intended that the insurance would guarantee the fulfillment of the bequest. We therefore find that there has been no ademption, and that the legatee shall receive whatever benefits the insurer elects to distribute in

satisfaction of the terms of the policy. At bar, the insurer has paid to the estate the maximum under testator's insurance policy, $2,600, in exchange for title to the wrecked vehicle. We therefore follow the intent of the testator and award that amount to Roy T. Bireley in satisfaction of the specific bequest of the car.

## DECREE NISI

And now, this August 15, 1980, it is hereby ordered, adjudged, and decreed that:

1. A reasonable executor's commission of $1,217.92 or three percent of the gross estate, is awarded to Roy T. Bireley, and he is hereby ordered to repay the estate any compensation received in excess of that amount;

2. A reasonable attorney's fee of $2,475 calculated on an hourly wage of $55 per hour for 45 hours, is awarded to counsel for the executor and he is hereby ordered to repay to the estate any compensation he has received in excess of that amount;

3. Counsel for the executor and Roy T. Bireley, Executor, are hereby surcharged an amount equal to the interest which would have accrued on the estate funds in the Central Penn checking account had they been invested in a savings account, such amount to be calculated according to the actual monthly balances in the account from December 1, 1977, to the present, using the average effective interest rate on similar accounts in the Philadelphia area during the period in question. This surcharge shall be divided between the executor and his attorney proportionately according to their fees as awarded above.

4. In satisfaction of the specific bequest of the testator's automobile, Roy T. Bireley shall receive $2,600, the amount of the insurance proceeds from the vehicle.

5. The remainder of the estate, including all payments made in accordance with this decree, shall be equally divided and distributed among objectants, Linda Sue Collins, Pattie Jo Vanvooris, Tara Elizabeth McClure, and Stephanie Lee Mitchell.

6. Parties are hereby ordered to submit to this court, within 30 days from this date, evidence and conclusions necessary to the computation of the surcharge according to the guidelines set out above.