J-S09031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RE: ESTATE OF IRENE OLICK BUNGARDY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THOMAS W. OLICK | : | No. 1307 MDA 2017 |

Appeal from the Decree August 9, 2017
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s):  35-16-00957

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 20, 2018**

Appellant, Thomas W. Olick, appeals from the decree entered in the Lackawanna County Orphans' court, following its decision on Appellant's petition for removal of Appellee, Marguerite Dippel, as Co-Executor of the Estate of Irene Olick Bungardy, deceased, and related estate claims, and his motion to compel the Register of Wills to file and docket documents Appellant maintains have been refused.  We affirm the decree and quash the appeal in part.

The Orphans' court decision and decree sets forth the relevant facts of this case.  Therefore we have no reason to restate them.  The court held a hearing on Appellant's petition on April 21, 2017, after which the parties continued to debate certain estate issues.  On August 9, 2017, the court denied Appellant's claims for relief and granted in part Appellee's motion to sell decedent's residence.  Appellant filed a notice of appeal on August 18, 2017.   No concise statement of errors complained of on appeal, per

_____
* Retired Senior Judge assigned to the Superior Court.

Pa.R.A.P. 1925(b) was ordered or filed.

Appellant raises these issues on appeal:

[WHETHER THE ORPHANS' COURT ERRED WHEN IT:

(1) OVERRULED APPELLANT'S OBJECTIONS TO APPELLEE DIPPEL'S INVENTORY OF DECEDENT'S ESTATE;

(2) DENIED APPELLANT'S REQUEST FOR SANCTIONS;

(3) DENIED APPELLANT'S MOTION TO REMOVE APPELLEE DIPPEL AS CO-EXECUTOR;

(4) DENIED APPELLANT'S MOTION TO COMPEL APPELLEE CLERK OF ORPHANS' COURT TO ACCEPT APPELLANT'S FILINGS; AND

(5) GRANTED APPELLEE DIPPEL'S MOTION TO SELL DECEDENT'S RESIDENCE AT A PRIVATE SALE?]

(Appellant's Brief at 2).

Principally, Appellant complains that the court should have removed Appellee as Co-Executor of the Estate of Irene Olick Bungardy, deceased, because Appellee failed to protect the estate's assets and abused her position as Co-Executor for personal gain, which is *prima facie* evidence of fraud. Appellant's claim for sanctions relates to Appellee's alleged failure to protect the estate and her alleged non-compliance with various court orders to produce pertinent documents. Additionally, Appellant contends Appellee improperly included assets in the estate inventory, while also clandestinely excluding assets for her personal enrichment. Appellant also claims the clerk of Orphans' court exceeded his authority when he wrongfully rejected the submission of documents directly related to the estate. Appellant

concludes the Orphans' court abused its discretion and erred as a matter of law in its decision, which must be reversed. We cannot agree.

> Our standard of review of the findings of an [O]rphans' court is deferential.
>
> > When reviewing a decree entered by the Orphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
> >
> > However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> [T]he Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (internal citations and quotation marks omitted). "[T]he Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super. 2003). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297

(Pa.Super. 2007)). "Our scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record. *In re Estate of Karschner*, 919 A.2d 252, 255-56 (Pa.Super. 2007) (quoting *In re Estate of Westin*, 874 A.2d 139, 142 (Pa.Super. 2005)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Thomas J. Munley, we conclude Appellant's issues merit no relief. The Orphans' court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Orphans' Court Decision and Decree, dated August 9, 2017, at 2-5) (finding: evidence did not show Appellee Dippel performed tasks and responsibilities of estate administration in any way harmful to Decedent's estate; evidence also failed to show Appellee Dippel acted dishonestly, neglectfully, or without care; rather, testimony at April 21, 2017 hearing indicated Appellee Dippel timely met her responsibilities as co-executor; Appellee Dippel's administration of estate did not warrant sanctions; evidence demonstrated bank accounts at issue were multiple-party joint accounts in names of both Decedent and Appellee Dippel, with right of survivorship; inclusion of these joint bank accounts in Decedent's will does not negate right of survivorship; similarly, savings bonds Decedent bought during her lifetime were co-owned by Decedent and Appellee Dippel; during her lifetime, Decedent gave Appellee Dippel jewelry that Appellant

- 4 -

claimed was missing from inventory; evidence indicated Appellee Dippel has complied with court's orders regarding production of documents concerning estate matters, assets, and administration; bank accounts and savings bonds were not estate assets, because they were co-owned by Decedent and Appellee Dippel upon Decedent's death; when Decedent died, Appellee Dipple became owner of bank accounts and savings bonds *via* right of survivorship; assets passing outside estate are not part of Decedent's estate and are excluded from estate accounting and inventory; clerk of Orphans' court rejected Appellant's filing of two civil suits, raising tort claims against Appellee Dippel and Appellee Dippel's counsel; office staff of clerk of Orphans' court informed Appellant that documents regarding civil lawsuits must be filed in proper filing office, Clerk of Judicial Records; Appellant's attempt to file civil complaint for money damages in estate litigation was incorrect; clerk of Orphans' court correctly directed Appellant to file his civil suits in proper manner).[1]  The record supports the Orphans' court's decision

_____

[1] With respect to the claim regarding the court's order allowing the sale of Decedent's real estate, the court ordered the estate to list for sale the residence on the open market, because hiring a realtor is the proper way to dispose of the residence as an estate asset.  Appellant requested an arm's-length transaction, which the court granted.  Appellant prevailed on this issue, so neither he nor the estate is technically "aggrieved," so he cannot appeal that decision.  *See* Pa.R.A.P. 501 (stating only aggrieved party can appeal decision).  Significantly, under Pa.R.A.P. 342, Appellant cannot appeal from an order allowing executors to market realty in the estate; Appellant can appeal only from the order confirming the sale of the estate realty.  *See In re Estate of Krasinski*, ___ A.3d ___, ___, 2018 PA Super

*(Footnote Continued Next Page)*

and we have no reason to disturb it. Accordingly, as to all of Appellant's issues, except his claim regarding the court's order allowing Appellee to list Decedent's real estate for sale, we affirm based on the Orphan's court's decision and decree.

Decree affirmed; appeal quashed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/20/2018

_(Footnote Continued)_ —————

130 **\*7** (filed May 15, 2018) (_en banc_) (holding court order permitting sale of realty is not immediately appealable; order approving final sale of realty is immediately appealable because that is order which "determines an interest in real…property") (quoting Pa.R.A.P. 342(a)(6)). Thus, we quash Appellant's appeal of his claim regarding the court's order allowing Appellee to list Decedent's real estate for sale.



IN THE COURT
OF COMMON PLEAS
OF LACKAWANNA COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

**Re: Estate of Irene Olick Bungardy,
Deceased**

Register of Wills' File Number: 35-2016-957

DECISION and DECREE

Before the Court are the filed Motions of Petitioner Thomas Olick (hereinafter "Olick") regarding the Estate of Irene Olick Bungardy. Chiefly, Olick seeks the removal of Co-Executor Marguerite Dippel, maintaining that Marguerite Dippel (hereinafter "Dippel") is unsuitable to continue in her role administering the Estate, and should be removed by this Court. Olick also has raised an Objection to Inventory, a Motion for Sanctions, and an Objection to a proposed agreement for the sale of the Decedent's home. Olick also filed a Motion to Compel the Register of Wills to file and docket documents he maintains have been refused. The Motions of Petitioner regarding the Estate Administration are opposed by Dippel, and the Register of Wills opposes the Motion to Compel.

Irene Olick Bungardy died in August of 2016, leaving a Will executed in 2015. Olick and Dippel were granted Letters Testamentary, and according to the evidence offered at hearing, Olick and Dippel do not have a cooperative working relationship. Olick maintains that Dippel has been both uncommunicative with him and neglectful with respect to her responsibilities regarding Estate Administration. In Court, Olick stated that Dippel has also been wasting the Estate assets, converting Estate assets for her own benefit, and has engaged in misconduct regarding this Estate, while being assisted by Attorney Eugene Lucas. Olick maintains that the actions of Dippel with respect to the Estate are improper and sanctionable, which brings the Court to the first and most significant issue in this matter, the Petition for Removal of Dippel from her position of authority with respect to this Estate.

At the hearing, at which Olick represented himself, Olick testified that Dippel, along with Attorney Lucas, have not been forthcoming with his questions regarding Estate financial assets, the contents of a safe deposit box supposedly maintained by the Decedent, pieces of personal property such as Decedent's jewelry, and the proposed sale of Decedent's real estate. Coupled with the

1

0755 1736

alleged communication problems between the two Co-Executors, Olick asserted that the issues he raised regarding Dippel's abilities and trustworthiness with respect to their late mother's assets call for removal of Dippel, at the minimum.

Dippel testified at the hearing as well, and she indicated that she has thus far executed her responsibilities as Co-Executor in a competent manner, despite what she believed was a lack of assistance and cooperation from Co-Executor Olick. Dippel indicated that she caused the Will to be probated, obtained the necessary short certificates and federal tax identification number, opened an Estate bank account into which Estate assets were deposited, and used her personal funds to pay a significant inheritance tax bill in a manner which would allow the Estate to obtain a discount on that tax for early filing. She has been working to sell the Decedent's Lackawanna County real estate, which was appraised within weeks of the death of Bungardy, but her testimony was that Olick refused to agree to secure the services of a realtor to get the property sold. Regarding the safety deposit box, Dippel testified that she was concerned that Olick had removed four bonds from the box for potential personal use, so she took the remaining bonds from the Decedent's safety deposit box and placed them in her own safety deposit box; copies of those savings bonds were produced for Thomas Olick. Regarding jewelry owned by Decedent, Dippel stated that her mother had given her what jewelry she owned years prior to her death. Any communications problems, according to Dippel, are attributable to her Co-Executor.

The standard of care to which a fiduciary is held in Pennsylvania is that of such common skill, judgment and caution as persons of ordinary prudence, discretion, and intelligence under similar circumstances, would exercise in the management of their own estate. **In re Estate of Lerch, 159 A.2d 506 (Pa. 1960).** The honest exercise of discretionary power produces no liability absent "supine negligence or willful default." **In re Estate of Lohm, 269 A.2d 451 (Pa. 1970).** A Court may order removal in instances where it is alleged and shown that the fiduciary in question is wasting or mismanaging the assets of the Estate, or jeopardizing the interests and assets of the Estate which he or she is administering. **In re Shahan, 631 A.2d 1298 (Pa. Super. 1993).** Factual evidence regarding waste and mismanagement, rather than supposition, must be presented. In the matter before this Court, the evidence did not show that Dippel had performed the tasks and responsibilities of Estate administration in a way that that harmed the Estate, and it did not show that she acted dishonestly, neglectfully, or without care. Rather, as indicated through the testimony offered, Dippel met her responsibilities thus far in a timely manner, marshaling assets, hiring counsel, attempting to list the house for sale, and even paying inheritance tax from her own funds to allow the Estate to secure a discount on that tax. Olick did not show in any factually-supported way that the actions of Dippel as

2

0765 PAGE 737

Co-Executor were improper or harmful to the Estate, and for these reasons we will not grant Olick's Petition to Remove Co-Executor.

Olick's next Objection was to the completeness and accuracy of the Inventory Dippel provided. He stated that the Decedent possessed savings bonds, one or more bank accounts, and jewelry that were not contained in the Inventory, and he offered the possibility that those Estate assets may have remained in the private possession of Dippel. However, the evidence given at the hearing showed that the bank accounts in question were multiple party accounts in the names of the Decedent and Dippel, with right of survivorship to Dippel. Regardless of their inclusion in the Will, the circumstance of the accounts being named in a Will as an Estate asset does not defeat the survivorship right created by joint accounts merely because the Will would distribute a decedent's property in a different matter. **In re Estate of Cella, 12 A.3d 374 (Pa. Super. 2010).** Similarly, the savings bonds bought by Decedent during her lifetime were co-owned by Dippel and the Decedent. According to **31 C.F.R. §315.70,** should "one of the co-owners named on a bond die, the surviving co-owner will be recognized as its sole and absolute owner, and payment and reissue will be made as though the bond were registered in the name of the survivor alone." The jewelry which Olick claimed was missing from the Inventory was shown to have been given during Decedent's lifetime to Dippel, her only daughter. We overrule the Objection to Inventory as being without merit.

Similarly, we deny Olick's Motion for Sanctions against Co-Executor. Said Motion puts forth that Dippel did not produce documents for Olick's review in a complete and timely manner, yet the evidence showed that Respondent has, to this point, complied with Court Orders regarding the production of documents regarding Estate matters, assets, and administration. Again, the bank accounts and savings bonds were not Estate assets, as they were in the names of Decedent and Dippel and co-owned by both at the time of Decedent's passing, and right of survivorship made Dippel the owner of said assets. Assets passing outside of the Estate are not part of a Decedent's Estate and do not need to be included in any Estate Accounting and Inventory.

The sale of the Decedent's home is also an issue with which Olick takes issue. He asserted that Dippel:

> "has failed to permit the hiring of a realtor to dispose of Decedent's former residence. She keeps insisting that it can only be sold to her brother, Andrew Olick. She has failed to present to the Court and/or the Petitioner any valid sales agreement of the residence to Andrew and has

3

0765 PAGE 738

failed to justify why it should be sold to him at a price substantially less than the amount stated in the appraisal she obtained."[1]

Our review of the transcript indicated that, within weeks of Decedent's passing, Dippel obtained an appraisal on the Decedent's home, and was in contact with the other heir to this Estate, Andrew Olick, who made known his wish to purchase the property. The testimony of Dippel was that Andrew Olick offered less than the appraised amount, given that the Estate could avoid a realtor's fees and also that Andrew Olick was an heir, so that it would be appropriate to reduce the purchase price by one-third. Given that Co-Executor Olick apparently believes that a more arm's length transaction would be appropriate, and, despite the house's current state of disrepair, that hiring a realtor and seeking to sell the home on the open market is the proper way to dispose of this Estate asset, we will direct that a realtor be retained and paid with respect to selling the home, even though this may result in less, not more, money going to the heirs. Co-Executor's position to challenge the proposed sale of the house to Andrew Olick at a discount may prove unwise, as a guaranteed sale seems like an option Estate administrators would seize upon, yet Olick is a Co-Executor and he cannot be shut out of any administrative tasks, such as the selling of assets. Andrew Olick may purchase the property, should he so choose, through the realtor chosen by the Co-Executors.

Finally, Olick raised the issue that the Register of Wills of Lackawanna County (hereinafter "the Register") had refused to accept certain documents for filing, and that, regarding Olick's status as being allowed to proceed *in forma pauperis,* that the Register was "refusing to recognize that, and they want to charge me."[2] The document or documents at issue that the Register reportedly refused to file were one or more civil Complaints naming Olick as Plaintiff and Dippel and Attorney Eugene Lucas as Defendants. According to Olick:

> If I want to file a Complaint against Marguerite Dippel and Eugene Lucas, I have the right to do that. It's not up to her (the Register) to make a decision where venue and jurisdiction is.
>
> So if, in fact, it's the case that I've got to get her permission before I come to you and ask if I can file something in Motions Court, that's fine; but that's what she's doing. She's saying she's the gatekeeper. Nobody can file anything unless she says it's there, and that's wrong. I want to be able to file those Complaints.

In her testimony, the Register explained as so:

---

[1] Post Hearing Brief of Thomas W. Olick, filed May 31, 2017.
[2] Notes of Testimony of 4/21/17 hearing, p. 60.

4

0765 PAGE 739

"(the filings presented by Olick have) been accepted except for filings that are a civil matter. If it (a Complaint) has a tort in it where he (Olick) is suing someone or it has information in that, all it does is compound confusion for the Court.

You have to file properly, and I understand there is frustration on his behalf. We were trying to inform him so that he would file it correctly. We do not accept this filing. It has civil information in it. It had something to do with some civil matter he had filed with the Clerk of Judicial Records.

You can't just file in any office that you want because you presented it to us. We were trying to direct Mr. Olick in the correct manner. It doesn't belong with us.

So from an office perspective and an Orphans' Court perspective, anything that belongs to the Orphans' Court is filed with us. Any civil matter that pertains to a civil suit belongs in the Clerk of Judicial Records. It's as simple as that.

The Register is correct. Her office accepted for filing the Petition for Removal of Co-Executor, which is an estate matter under the jurisdiction of the Orphans' Court division of this Court. Her office rejected filings regarding two civil suits alleging a number of torts filed by Olick against his sister, Marguerite Dippel, and Attorney Lucas, and staff of the Register of Wills informed him that documents regarding civil lawsuits must be filed in the proper filing office, which for civil actions is the Clerk of Judicial Records. Olick's act of attempting to file a civil complaint for money damages under a Decedent's Estate caption with the Register of Wills was incorrect, and the Register was correct in directing Olick to file his civil complaint in the correct manner. Olick's issue with this action and direction of the Register is entirely without merit, as is his Motion to Compel. A litigant cannot choose to file an action in any division of the Court which he or she chooses, and circumstances such as proceeding *pro se,* and *in forma pauperis,* do not change that rule.

DECREE

AND NOW, this _9th_ day of August, 2017, this Court HEREBY DENIES the Petition to Remove Co-Executor Dippel, DENIES the Objections presented by Co-Executor Olick regarding the administrative actions of Dippel, and DENIES the Motion to Compel aimed at forcing the Register of Wills to accept for filing pleadings belong to civil matters. We GRANT his Objection with respect to Dippel's proposed sale of the property and we DIRECT the Co-Executors to

5

0765 PAGE 740

secure the services of a Realtor and allow the Decedent's home to be sold on an open market.

BY THE COURT:

_____, J.
Hon. Thomas J. Munley, Judge

Copies of this Decision were sent, via First Class U.S. Mail, Attorney Edwin Abrahamsen and Register of Wills' Solicitor Gallagher, and Thomas Olick, *pro se.*

6